Douglas Lawrence **OEFINGER, t/d/b/a D.L.O.; and David A. Goodman, t/d/b/a American Armament, Plaintiffs,**

v.

Leroy **ZIMMERMAN, Attorney General of the Commonwealth of Pennsylvania; Robert L. Keutch, Executive Deputy Attorney General, Commonwealth of Pennsylvania, and Executive Director, Bureau of Criminal Law Enforcement, Lawrence Claus, Deputy Attorney General, Commonwealth of Pennsylvania; and Robert L. Colville, District Attorney of Allegheny County, Defendants.**

Civ. A. No. 83–3013.

United States District Court,
W.D. Pennsylvania.

Dec. 19, 1984.

John W. Murtagh, Pittsburgh, Pa., for plaintiff Oefinger.

Rochelle Friedman, Pittsburgh, Pa., for plaintiff Goodman.

Joel M. Kaufman, Asst. Dist. Atty., John S. Sherry, Pittsburgh, Pa., for Dist. Atty.

Jose Hernandez-Cuebas, Deputy Atty. Gen., Pittsburgh, Pa., for Commonwealth defendants.

## OPINION

SIMMONS, District Judge.

### I.

This action was originally filed December 2, 1983, under the Commerce Clause of the United States Constitution, by Plaintiffs Douglas Lawrence Oefinger, t/d/b/a DLO and David A. Goodman, t/d/b/a American Armament, against the Attorney General and his representatives and the District Attorney of Allegheny County, seeking injunctive relief. Frankford Arsenal was originally named as a party to this action, but on June 20, 1984, this Court granted the Motion of Frankford Arsenal for Voluntary Dismissal.

Plaintiff Douglas Lawrence Oefinger, t/d/b/a DLO [hereinafter "Oefinger"], is federally licensed and registered by the Secretary of the Treasury to engage in foreign and interstate commerce by importing and manufacturing firearms pursuant to the National Firearms Act of 1934, 26

U.S.C. §§ 5801 *et seq.*, and the Gun Control Act of 1968, 18 U.S.C. §§ 921 *et seq.*

Plaintiff David A. Goodman, t/d/b/a American Armament [hereinafter "Goodman"], is likewise federally licensed pursuant to the National Firearms Act and the Gun Control Act to engage as a Class 3 dealer in Title II firearms (including machineguns short-barrelled shotguns and silencers), and is also licensed by the Commonwealth of Pennsylvania to sell firearms through a license issued by the Sheriff of Allegheny County, Pennsylvania. American Armament is also registered as the manufacturer's representative for the Plaintiff D.L.O.

The Original Complaint is based on the Plaintiff's contention that the Defendants have interfered with foreign and interstate commerce and have arrested or threatened to seize firearms which were distributed through interstate commerce in full compliance with the requirements of federal firearms laws.

Specifically, the Plaintiffs allege that the Defendants have seized firearms lawfully maintained as sales samples at the principal place of business of American Armament and have subjected Plaintiff Goodman to prosecution for the possession of said firearms. Such actions were allegedly taken by the Defendants pursuant to 18 Pa.C.S.A. § 908 of the Pennsylvania Crimes Code, which prohibits the dealing in or possession of certain "offensive weapons". Plaintiffs claim that Defendant Keuch has notified the Bureau of Alcohol Tobacco and Firearms that the Plaintiffs distribute "prohibited offensive weapons" under the Pennsylvania statute, 18 Pa.C.S.A. § 908, and as a result, the Bureau of Alcohol Tobacco and Firearms has not authorized the transfer of these firearms to and by the Plaintiffs in the Commonwealth of Pennsylvania.

Plaintiffs claim that the actions and threatened actions of the Defendants make it impossible for the Plaintiffs to do business in the Commonwealth of Pennsylvania as they are federally licensed to do, since they are threatened with arrest if they engage in their business and the seizure of their sales samples. As a result, the Plaintiffs claim that they are being deprived of their ability to freely engage in foreign and interstate commerce as they are federally licensed to do, and that they have suffered irreparable loss, damage and injury as a consequence of the actions of the Defendants. Plaintiffs seek an injunction restraining Defendants from prohibiting and interfering with interstate commerce and directing Defendants not to arrest, seize or threaten to arrest and seize the Plaintiff's and their goods, providing that the Plaintiffs are in full compliance with the laws and regulations of the United States Department of Treasury pertaining to commerce in firearms.

Plaintiff Goodman filed a first amended complaint, stating causes of action under the Commerce Clause (U.S. Constitution, Article I, § 8), the Supremacy Clause (U.S. Constitution, Article VI, clause 2), the Fourteenth Amendment, and the Civil Rights Acts, 42 U.S.C. §§ 1983, 1985 and 1988, and seeking monetary damages in addition to injunctive relief.

Plaintiff Goodman then filed a Second Amended Complaint on June 22, 1984, based on the Commerce Clause (U.S. Constitution, Article I, § 8), the Supremacy Clause (U.S. Constitution, Article VI, clause 2), the Fourteenth Amendment, and the Civil Rights Acts, 42 U.S.C. §§ 1983, 1985 and 1988. The Second Amended Complaint is based on Plaintiff's contention that the Supremacy Clause preempts interstate commerce as it relates to licensing to engage in foreign and interstate commerce in firearms, and that therefore, the Commonwealth of Pennsylvania may not impose criminal or civil sanctions against Plaintiff or interfere with his business.

Goodman also claims that Defendants have conspired to deny the Plaintiff of the equal protection of the law by causing the arrest of Plaintiff Goodman and threatening his re-arrest, and have permitted other arms dealers similarly situated to Plaintiff to engage in the same activities which Plaintiff is prohibited from engaging in by

Defendants with respect to 18 Pa.C.S.A. § 908, such activity constituting a selective enforcement of the laws of the Commonwealth of Pennsylvania.

Plaintiff additionally claims that Defendants agreed among themselves that the Attorney General would investigate Plaintiff's activities, seize his firearms and institute a criminal complaint against Plaintiff when they knew or should have known that such investigation was not within their jurisdiction under the Commonwealth Attorney's Act, 71 P.S. § 732–101 *et seq.* The Defendant Colville is claimed to have colluded with the Attorney General in the wrongful investigation of the Plaintiff. Such acts of conspiracy are alleged to have been undertaken by Defendants acting under color of state law.

Plaintiff claims actual and impending irreparable loss, injury and damages to business and goodwill, and seeks an injunction restraining the Defendants from enforcing 18 Pa.C.S.A. § 908, restraining the Defendants from arresting, seizing or threatening to arrest or seize, restraining Defendants from selective enforcement of the laws of the Commonwealth of Pennsylvania, a declaratory judgment that the Plaintiff has the right to engage in the interstate commerce of firearms without prosecution or threat of prosecution, and money damages, costs and fees.

The Second Amended Complaint is applicable to Plaintiff Goodman only. At a June 20, 1984 conference, Plaintiff Oefinger's attorney indicated to the Court on the record that Plaintiff Oefinger would continue to rely on the Original Complaint. (Tr. at 18, 6–20–84).

All of the Defendants have filed Answers to the original and amended complaints, and seek dismissal of the complaints for various reasons, among them failure to state a claim for relief. Numerous briefs have been submitted and extensive oral arguments have been heard concerning the motions of the Defendants to dismiss this above-captioned action. From all that has been submitted thus far, it appears to this Court that the crucial issue to be decided

by this Court is whether the federal government has preempted interstate commerce in firearms, as Plaintiffs allege it has, and whether the Pennsylvania Crimes Code, 18 Pa.C.S.A. § 908, which makes it an offense to make, repair, sell, deal in, use or possess any "offensive weapon", is in direct and positive conflict with the Gun Control Act of 1968, 18 U.S.C. § 921 *et seq.* Since the thrust of both the original complaint (Oefinger) and the amended complaint (Goodman), is that the Defendants have impermissibly interfered with interstate commerce in an area which has been preempted by Congress, it appears that the resolution of this issue will determine whether or not this action can proceed.

If the Pennsylvania statute is in direct and positive conflict with the federal legislation, then the state statute must yield to the federal right to regulate this particular aspect of interstate commerce. However, if the state statute is not in direct and positive conflict on its face or as applied, then Plaintiffs would not be entitled to their requested injunctive relief, since there would be no impermissible interference with interstate commerce. Further, any actions of the Defendant taken pursuant to that state statute, if the state statute is not in conflict with the federal legislation, could not then be the basis for Plaintiff's claim of a civil rights violation.

## II.

This case involves the interplay of three legislative enactments, the National Firearms Act, the Gun Control Act of 1968, and the Pennsylvania Crimes Code section pertaining to prohibited offensive weapons. The relevant provisions and backgrounds of these enactments are especially important to the resolution of this case.

### A. *The National Firearms Act*

The National Firearms Act of 1934 sets forth a comprehensive scheme assessing taxes on importers, manufacturers, and dealers in firearms and providing for a registration scheme for the same. The Act assesses an occupational tax on all import-

ers, manufacturers, and dealers, and provides for the payment of a transfer tax. 26 U.S.C. §§ 5801, 5811. The transfer of possession of a firearm is subject to the approval of the Secretary of the Treasury, providing that certain application and registration forms have previously been properly filed with the Secretary. 26 U.S.C. § 5812. Additionally, the Act sets forth special taxes and registration requirements for the making of firearms, 26 U.S.C. §§ 5821, 5822, 5841, and 5842. Finally, the Act sets forth prohibited acts and criminal penalties and forfeiture for the violation of any provision of the Act. 26 U.S.C. § 5861, 5871, 5872.

The regulations pertaining to interstate commerce in firearms and machine guns are contained in 27 C.F.R. Parts 178 and 179. For the purposes of these parts, a person is defined as "any individual, corporation, company, association, firm, partnership, society or joint stock company." 27 C.F.R. § 178.11; 27 C.F.R. 179.11.

In discussing licenses, Section 178.58 further sets forth:

§ 178.58 State or other law.

A license issued under this part confers no right or privilege to conduct business or activity contrary to State or other law. The holder of such a license is not by reason of the rights and privileges granted by that license immune from punishment for operating a firearm or ammunition business or activity in violation of the provisions of any State or other law. Similarly, compliance with the provisions of any State or other law affords no immunity under Federal law or regulations.

In discussing the special occupational tax liability of persons engaging in the business of manufacturing and dealing in firearms, 27 C.F.R. § 179.52 specifically states:

APPLICATION OF STATE LAWS

§ 179.52 State regulations.

Special tax stamps are merely receipts for the tax. Payment of tax under Federal law confers no privilege to act contrary to State law. One to whom a special tax stamp has been issued may still be punishable under a State law prohibiting or controlling the manufacture, possession or transfer of firearms. On the other hand, compliance with State law confers no immunity under Federal law. Persons who engage in the business of importing, manufacturing or dealing in firearms, in violation of the law of a State, are nevertheless required to pay special (occupational) tax as imposed under the internal revenue laws of the United States. For provisions relating to restrictive use of information furnished to comply with the provisions of this part see § 179.32.

### B. *The Gun Control Act of 1968*

The Gun Control Act of 1968, 18 U.S.C. § 921, *et seq.*, is designed to provide for better control of the interstate traffic in firearms. According to the House Report accompanying this legislation, the principal purpose of the enactment was "to strengthen Federal Controls over interstate and foreign commerce in firearms and to assist the States effectively to regulate firearms traffic within their borders." H.Rep. No. 1577, 3 U.S.Code Cong. & Admin.News 1968, p. 4410 at 4411. The legislation was passed in response to widespread national concern that the increasing rate of crime and use of firearms in violent crimes manifested the need to strengthen Federal regulation of interstate firearms traffic. The Gun Control Act was designed "to control the indiscriminate flow of such weapons across State borders and to assist and encourage States and local communities to adopt and enforce stricter gun control laws." *Id.* at 4413. The Attorney General of the United States, in an executive communication to the House of Representatives, in requesting the enactment of that legislation stated:

By recognizing the Federal responsibility to control the indiscriminate flow of firearms and ammunition across State borders, this bill will give States and local communities the capacity and the incentive to enforce effectively their own gun control laws. Once enacted into law,

it will insure that strong local or State laws are not subverted by a deadly interstate traffic in firearms and ammunition.

*Id.* The above communication was made a part of House Report No. 1577.

The Gun Control Act includes in its definition of person "any individual, corporation, company, association, firm, partnership, society, or joint stock company. 18 U.S.C. § 921(a)(1). The Act specifies certain unlawful acts, and permits only a licensed importer, manufacturer or dealer to ship, transport or receive any firearm in interstate commerce. 18 U.S.C. § 922(a)(1). Importers, dealers and manufacturers are further forbidden, with several exceptions not relevant here, to ship or transport to any person other than a licensed importer, manufacturer, or dealer. 18 U.S.C. § 922(a)(2). Additionally, there are further restrictions placed on licensed importers, manufacturers and dealers limiting the sale and delivery of firearms. A licensed dealer may not sell to a person less than 18 years of age (shotguns and rifles) or 21 years of age (other than a shotgun or rifle). 18 U.S.C. § 922(b)(1). Significantly, firearms may not be sold by a licensed importer, manufacturer, or dealer to "any person in any State where the purchase or possession by such person of such firearm or ammunition would be in violation of any State law or any published ordinance." 18 U.S.C. § 922(b)(2). A licensee may not sell to an out-of-State unlicensed resident, 18 U.S.C. § 922(b)(3); may not sell or deliver any destructive device or machinegun, 18 U.S.C. § 922(b)(4); or sell any firearm without making a record of its purchase, 18 U.S.C. § 922(b)(5). Licensed importers, dealers and manufacturers are prohibited from selling to a fugitive, felon, mental defective or drug addict. 18 U.S.C. §§ 922(d)(1) through (d)(4). Licensing and record-keeping requirements are imposed in 18 U.S.C. § 923. Criminal penalties are set forth in 18 U.S.C. § 924.

The effect of the Gun Control Act on State law is set forth specifically in 18 U.S.C. § 927:

No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together.

## C. *Pennsylvania Crimes Code Provision, 18 Pa.C.S.A. § 908*

Title 18, Section 908, of the Pennsylvania Consolidated Statutes Annotated provides:

Prohibited offensive weapons

(a) Offense defined.—A person commits a misdemeanor of the first degree if, except as authorized by law, he makes, repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon.

Section 908 defines an "offensive weapon" as "any bomb, grenade, machine gun, sawed-off shotgun, firearm specially made or specially adapted for concealment or silent discharge, any blackjack, sandbag, metal knuckles, dagger, knife, razor or cutting instrument, the blade of which is exposed in an automatic way by switch, push-button, spring mechanism, or otherwise, or other implement for the infliction of serious bodily injury which serves no common lawful purpose."

Title 18 of the Pennsylvania Consolidated Statutes contains no definition of person, except with respect to Section 911, Corrupt Organizations, where person is defined as "any individual or entity capable of holding a legal or beneficial interest in property", (18 Pa.C.S.A. § 911(h)(2)), and with respect to 18 Pa.C.S.A. § 5702, which contains definitions under the Wiretapping and Electronic Surveillance Control Act. There person is defined as "[a]ny employee, or agent of the United States or any state or political subdivision thereof, and any individual, partnership, association, joint stock company, trust or corporation." 18 Pa.C.S.A. § 5702. These definitions are not relevant to the within action.

Definitions of words and phrases used in any statute finally enacted on or after September 1, 1937, are contained in 1 Pa.C.S.A. § 1991 (Supplementary Pamphlet 1964 to 1983). There "person" is defined as including "a corporation, partnership, and association, as well as a natural person."

Section 908 of Title 18 was amended by the General Assembly on July 6, 1984, Act No. 1984–134, H.B. No. 1799 as follows:

(b). Exceptions.—

(1) It is a defense under this section for the defendant to prove by a preponderance of the evidence that he possessed or dealt with the weapon solely as a curio or in a dramatic performance, *or that, with the exception of a bomb, grenade or incendiary device, he complied with the National Firearms Act (26 U.S.C. § 5801 et seq.),* or that he possessed it briefly in consequence of having found it or taken it from any aggressor, or under circumstances similarly negativing any intent or likelihood that the weapon would be used unlawfully.

[Amended matter underlined]. The effective date of the amended statute is 90 days after its July 6, 1984 passage.

### III.

Plaintiffs contend that Congress has occupied the field with respect to interstate commerce in firearms and licensing procedures. Plaintiffs contend that the Pennsylvania statute pertaining to prohibited offensive weapons is in direct and positive conflict with federal law, and the Pennsylvania statute as interpreted by the Defendants, interferes with the free flow of interstate commerce. Plaintiff Oefinger also argues that the Plaintiffs, as federal licensees, should not be considered "persons" under 18 Pa.C.S.A. § 908. It is argued that the inventory of Plaintiff Oefinger t/d/b/a D.L.O. is an inventory held by a business which is a federal licensee and not by a natural person. Although the federal licensees act through the natural persons of Oefinger and Goodman, it is submitted that the natural persons do not possess the inventories of the federal licensees. It is

when the Defendants interpret and apply 18 Pa.C.S.A. § 908 to the federal licensees as "persons" that the Plaintiffs claim that the statute is in direct and positive conflict with the federal law.

The pre-emption doctrine is based on the Supremacy Clause of the United States Constitution, Article VI, clause 2. When Congress has ordained that its enactments alone are to regulate an aspect of commerce, state laws regulating that aspect of commerce must fall, regardless of whether such command of Congress is explicitly stated in the language of the enactment or implicitly contained in the structure and purpose of the enactment. *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604, 614 (1977). In determining whether Congress has preempted a certain aspect of commerce, congressional intent must be examined.

Absent explicit pre-emptive language, Congress' intent to supersede state law altogether may be inferred because "[t]he scheme of federal regulation may be so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," because "the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject" or because "the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose." *Rice v. Sante Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1147 (1947).

*Fidelity Federal Savings & Loan Association v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664, 675 (1982).

Even if Congress has not completely displaced State regulation, to the extent that a state law actually conflicts with the federal law, the state law is nullified. This is the situation when it is physically impossible to comply with both the federal and state regulations or when state law is an obstacle to the accomplishment and execution of the full purposes and objectives of

the federal enactment. *Id.*, 458 U.S. at 153, 102 S.Ct. at 3022, 73 L.Ed.2d at 675. (Citing *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–43, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963); *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

It is true as Plaintiffs contend, that Plaintiffs are federally licensed, both under the National Firearms Act and the Gun Control Act to engage in interstate commerce with respect to the sale of firearms. However, these two above-mentioned enactments do not confer upon Plaintiffs an absolute license to deal in firearms, nor do they evince a Congressional intent to preempt the field of commerce in firearms. The federal licenses that Plaintiffs have secured are not absolute licenses.

The Gun Control Act, 18 U.S.C. § 927, specifically provides that it is not to be construed as indicating Congressional intent to occupy the field to the exclusion of the law of any State unless there is a direct and positive conflict which cannot be reconciled. Although it is true that the Senate Amendment added to the anti-pre-emption provision "no governmental agency, including State ... may legalize the confiscation of otherwise legally held and used firearms", this provision was not contained in the legislation as enacted. Nevertheless, the Conference Report No. 1956 indicated that the Act should not be construed to authorize the confiscation of "lawfully possessed firearms." 3 U.S.Code Cong. & Admin.News 1968, at 4433. However, that deleted portion merely refers to "lawfully possessed" firearms, and not to firearms "lawfully possessed under federal law."

Section 922(b)(2) of the Gun Control Act also makes it unlawful for a licensed dealer to sell or deliver a firearm to a person in any State where the purchase or possession by that person would be in violation of any State law. The legislative history of the Gun Control Act indicates that its principal purpose is to strengthen Federal controls and "to *assist* the States effectively to regulate firearms traffic *within their borders.*" [Emphasis added]. 3 U.S.Code Cong. & Admin.News 1968 at 4411. The Act was designed "to assist and encourage States and local communities to adopt and enforce stricter gun control laws." *Id.* at 4413.

■ From the explicit words of the statute as well as a review of the legislative history of the enactment, this Court is convinced that the Gun Control Act of 1968 did not explicitly preempt state legislation pertaining to possessing and dealing in firearms. The purpose of the Gun Control Act was to assist the States in the regulation of firearms by strengthening Federal controls, and the legislation was designed to enhance, and not to supersede the efforts of the States and to encourage the adoption and enforcement of more stringent State gun control laws. This Court's reading of the legislation is buttressed by the Federal Regulations, 27 C.F.R. §§ 178.58 and 179.-52, which specifically state that a license issued pursuant to the Federal Regulations confers no right to conduct business contrary to State law and grants no immunity from punishment for operating a firearm business or activity in violation of state law. (27 C.F.R. § 178.58). Payment of tax under federal law also confers no privilege to act contrary to State law. 27 C.F.R. § 179.52.

■ The federal scheme to license and regulate interstate traffic in firearms does not displace the power of the State to determine that certain offensive weapons should not be possessed within the boundaries of the State. The licenses granted to Plaintiffs by the federal government were not absolute licenses to do business in every State, rather, the licenses granted under the federal legislation permit the Plaintiffs to engage in their firearm business so long as they do not act contrary to State law. The legislation clearly permits the States to determine what firearms may lawfully be possessed within the boundaries and borders of that State.

The state law, 18 Pa.C.S.A. § 908 does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress which are re-

flected in the Gun Control Act. As Congress clearly stated, the Gun Control legislation was designed to assist the states in regulating firearms within their own borders, and was never designed to prevent States from regulating firearms within their own borders.

There is no direct and positive conflict between the federal enactment and the Pennsylvania Crimes Code. As this Court has said previously, Congress chose to prohibit transactions in and possession of firearms which are contrary to state law. This is apparent from the explicit wording of the Gun Control Act, its legislative history, and the federal regulations. In reaching this conclusion, this Court also takes notes of decisions in other jurisdictions concerning the effect of federal legislation on state laws prohibiting the possession of firearms. For example, in *Barkey v. Firearms Control Board*, 293 F.Supp. 420 (S.D.N.Y. 1968), the Court specifically noted: "The Federal Firearms Act does not exempt anyone from state law, and the regulations promulgated under that Act, 26 U.S.C. § 5847, specifically indicate that the federal statute does not immunize from state law. Indeed, the very license plaintiff puts forth as evidence of compliance with the federal Act contains a warning that the license does not exempt from state law." 293 F.Supp. at 421 [footnotes omitted]. In *Rinzler v. Carson*, 262 So.2d 661 (Fla. 1972), a state statute made possession of certain firearms unlawful, however, the state legislature specifically exempted from the operation of that statute "firearms in violation hereof which are lawfully owned and possessed under provisions of federal law." 262 So.2d at 667. The firearm in question was registered under the National Firearms Act, and the *Rinzler* Court recognized that possession of that firearm was lawful in those circumstances because the state legislature specifically made such possession of a federally licensed firearm lawful, and not by the mere fact that the firearm was federally registered.

It is true that the registration with the federal authorities did not insulate its possession against a state statute which outlaws such possession or ownership. This is true because it is specifically provided in the registration certificate that the registration does not permit the registrant to possess the firearm in violation of state or local law. Were it not for the specific exception contained in [the state statute], the possession by the appellant would be unlawful. But the Legislature in enacting the statute specifically excepts from its operation weapons lawfully owned and possessed under the provision of federal law.

Finally, in *Pettit v. State of Texas*, 627 S.W.2d 453 (Tex.App.1981), Defendant appealed his conviction for carrying a handgun on grounds that he was a federally licensed firearms dealer. The Court, in affirming his conviction, stated: "The Gun Control Act contemplates obedience to relevant state statutes, and appellant cannot assert that he is here wrongly precluded from carrying a weapon pursuant to his federal license to deal in firearms under Texas law."

■ Plaintiffs contend that the Pennsylvania statute as applied is in direct and positive conflict with federal law because the Plaintiffs as federal licensees should not be considered as persons since it is the federally licensed business which possesses the firearms. This Court cannot accept this argument for several reasons. First, while it is true that the Pennsylvania statute does not contain a definition of "person", "person" is defined in 1 Pa.C.S.A. § 1991 to include a partnership and association as well as a natural person. That definition is to be used in any statute finally enacted on or after September 1, 1937, unless the context clearly indicates otherwise. There is nothing in § 908 to indicate that a contrary intention was desired by the legislature. Not only does section 908 prohibit the possession of an offensive weapon, it also prohibits making, repairing, selling or otherwise dealing in offensive weapons. There is nothing in the language of that act to indicate that dealers, whether

natural persons or partnerships and associations, have a special status with respect to the making, selling or dealing in offensive weapons, which makes them immune to the operations of that act. We must assume that had the legislature originally wanted to so except federal licensees from the operation of the statute, they would have inserted the appropriate language to accomplish that result.

The Pennsylvania legislature has recently amended section 908 to allow as a defense under that section the showing of compliance under the National Firearms Act. The Pennsylvania legislature in its wisdom chose to make compliance with the National Firearms Act a defense to a section 908 prosecution. It was not required to do so, nor was it required to absolutely exempt federal licensees from the operation of the criminal statute. The legislature chose only to exempt police forensic firearms experts and laboratories from the operation of the statute. 18 Pa.C.S.A. § 908(b)(2). This Court cannot usurp the authority of the Pennsylvania legislature and hold that a federal firearm licensee is absolutely exempt from the operation of the statute. This Court reads section 908 as being designed to prohibit certain offensive weapons, including machine guns, which the legislature has determined are so offensive in themselves that except in the most narrow and obvious situations, should not be permitted at all within the confines of Pennsylvania. *See Commonwealth v. Ponds,* 236 Pa.Super.Ct. 107, 111, 345 A.2d 253 (1975); *Commonwealth v. Adams,* 245 Pa.Super.Ct. 431, 369 A.2d 479 (1976); *Commonwealth v. McFarland,* 252 Pa.Super.Ct. 523, 382 A.2d 465 (1977). This is consistent with the Congressional intent underlying the Gun Control Act of 1968, that states be permitted to regulate firearms within their own borders.

The amendment to section 908 is now in effect in Pennsylvania. This Court believes that this amendment to the Crimes Code moots Plaintiffs' claim for injunctive relief. This Court must presume that the Defendants will act regularly and in good faith and not prosecute in cases where the existence of a federal license would be a valid defense to the action.

▆▆▆ With respect to Plaintiff's claim that 42 U.S.C. § 1985 has been violated by the actions of the Defendants in conspiring to deprive Plaintiff of the equal protection of the laws, this claim must be dismissed. Under section 1985, the plaintiff must allege some racial or otherwise class-based, invidiously discriminatory animus behind the action of the conspirators. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). The complaint here fails to allege any such class-based invidiously discriminatory animus. The *Griffin* requirement of such a class-based invidiously discriminatory animus applies to state action conspiracies as well as private conspiracies. *See Petrone v. City of Reading,* 541 F.Supp. 735 (E.D.Pa.1982); *Lesser v. Braniff Airways, Inc.,* 518 F.2d 538 (7th Cir.1975); *Landrigan v. City of Warwick,* 628 F.2d 736, 739 n. 1 (1st Cir.1980). The claim based upon a violation of 42 U.S.C. § 1985 must be dismissed.

▆▆▆ Plaintiff claims money damages for the income lost from the use and rights conveyed by the federal license and the income lost from firearms which were seized pursuant to the Pennsylvania statute, and damages to goodwill and reputation. In light of this Court's decision that the state statute is not in conflict with the federal legislation, and that there is no impermissible interference with interstate commerce, Plaintiff is not entitled to recover money damages. As the Court has stated previously, the federal license is not an absolute license to engage in the commerce of firearms within Pennsylvania, the federal license merely permits Plaintiffs to engage in the firearm business so long as they do not act contrary to state law. Since Plaintiffs have no right to conduct their firearm business contrary to state law, they are not entitled to recover money damages when the proper enforcement of that state law results in a loss of income and/or seizure of their firearms. In any event, in prosecuting Plaintiffs for viola-

tions of the Pennsylvania statute, 18 Pa.C. S.A. § 908, the Defendants would be absolutely immune from a civil suit for money damages. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

For all of the reasons previously set forth, this Court concludes that Plaintiffs' have failed to state a claim for relief, and that in the circumstances, the above-captioned case must be dismissed.

An appropriate Order will be entered.