Requestor: Patrick M. Malgieri, Esq., County Attorney Monroe County Department of Law County Office Building 39 West Main Street Rochester, New York 14614
Written by: James D. Cole, Assistant Attorney General in Charge of Opinions
You have requested an opinion regarding several aspects of section400.00 of the Penal Law, governing the licensing of firearms dealers and individuals who wish to carry concealed handguns.
First, you have expressed concern that individuals who make multiple additions and deletions from their carry permits may be dealing handguns from the permit. You have asked whether the licensing officer may deny the request of a currently licensed permit holder to add or delete handguns from his permit if there is cause to believe that the permit is being used for other than its intended original purpose.
A licensing officer has broad discretion in determining whether "proper cause exists" for the issuance of a carry permit pursuant to Penal Law § 400.00(2)(f). Matter of Moore v Gallup, 267 App. Div. 64 (3d Dept 1943), affd, 293 N.Y. 846 (1944); Matter of Marlow v Buckley,105 A.D.2d 1160 (4th Dept 1984); Hochreich v Codd, 68 A.D.2d 424 (1st Dept 1979). Implicit in this discretion is the licensing officer's power to issue a permit subject to conditions or restrictions, so long as there is a rational basis for them. Matter of Davis v Clyne, 58 A.D.2d 947 (3d Dept 1977), lv denied, 44 N.Y.2d 646 (1978). See, Matter of Michaelson vNew York City Police Department, 53 A.D.2d 573 (1st Dept 1976); 1972 Op Atty Gen 4. If there is reason to believe that the carry permit is being used in violation of legitimate restrictions, or for purposes other than those stated on the permit application, the licensing officer may refuse to amend, or may revoke, the carry permit, so long as his decision is not arbitrary or capricious and the licensee is given notice and a reasonable opportunity to present evidence. Matter of Guida v Dier, 54 A.D.2d 86 (3d Dept 1976). For example, in Hochreich v Codd, supra, a licensing officer was not arbitrary or capricious in refusing to permit addition of a fourth pistol to a carry permit upon his finding that the addition posed an unreasonable risk; in Matter of Sherwood, 80 Misc.2d 215 (Albany City Ct 1975), an applicant's license was revoked in response to his request to add a tenth gun to his carry permit upon the licensing officer's conclusion that the license was not being used for its stated purpose.
Clear from these decisions is the authority of the licensing officer to monitor carry licenses he has issued to ensure that the basis for issuance of the license remains. Once issued, a carry license is not irrevocable.
The Penal Law authorizes the issuance of a carry license only upon a showing of proper cause. Section 400(2)(f). If the underlying circumstances serving as the justification for issuance of the license have changed, a licensing official necessarily must have the power to modify or revoke the original license. Case law has recognized this authority. Matter of Sherwood, supra; Hochreich v Codd, supra.
A licensing official, in order to ensure that handguns are at all times possessed by persons meeting the requirements of the State Penal Law, must be able periodically to review the licensee and his current circumstances. A licensing official, in issuing a license, may impose reasonable restrictions to ensure that the licensee is at all times qualified under State law to possess and carry a firearm. See, 1972 Op Atty Gen (Inf) 4.
You have asked whether a rule similar to that expressed in section415(1)(a) of the Vehicle and Traffic Law (dealer in automobiles) would permit you to regard as a dealer any person conducting more than five sales or exchanges of firearms during a calendar year. Section 265.00(8) of the Penal Law, like the Federal law (18 U.S.C. § 921[a][11]; see
27 C.F.R. § 178.11), defines a "dealer in firearms" as a person "who engages in the business of" buying, selling or otherwise dealing in firearms. The Court of Appeals, in a different context, has held that the evidence needed to show that a person is engaged in a business "will necessarily depend on the circumstances of each case". People vLombardo, 61 N.Y.2d 97, 104-05 (1984), citing, United States v VanBuren, 593 F.2d 125 (9th Cir 1979). Van Buren, supra, held that, for purposes of Federal law, firearms dealers are those "who hold themselves out as a source of firearms," and that there is no "magic number" of sales which must be proven to establish the seller as a dealer. In light of these decisions, we believe that a determination that a person is a "dealer in firearms" under New York law similarly requires examination of all relevant facts and circumstances, and that frequency of transactions, though highly significant, is not necessarily dispositive of the issue.
We believe that the licensing officer is permitted to require an explanation of any requested change to an existing carry permit. It is incumbent upon the applicant in each case to demonstrate that "proper cause exists" for any such change. See, Bernstein v Police Department,85 A.D.2d 574 (1st Dept 1981); Hochreich v Codd, supra; Shapiro vCrowley, 46 A.D.2d 633 (1st Dept 1974). Further, a licensing officer may revoke the carry license, if at any time he finds that it is no longer being used for a proper purpose.
Your second question is whether a dealer licensed to sell firearms in New York may sell these firearms at licensed gun shows within the State. As you know, under both State and Federal law a licensed dealer is generally restricted to doing business at the particular place of business stated on the license. See, Penal Law § 400.00(7);18 U.S.C. § 923(a), (h); National Rifle Association v Brady,914 F.2d 475, 480-81 (4th Cir 1990), cert denied, 111 S Ct 1580 (1991). A recently enacted provision of Federal law, 18 U.S.C. § 923(j), permits a federally-licensed firearms dealer to conduct business temporarily at a properly authorized gun show or event within his state. By its terms, this provision states that a federally-licensed importer, manufacturer, or dealer may conduct business temporarily at a location other than the location specified on the license if the temporary location is a gun show or is sponsored by a national, State or local organization devoted to the collection, competitive use or other sporting use of firearms and provided that the location is in the State specified in the Federal license. 18 U.S.C. § 923(j). Your question is whether section 923(j) permits a dealer in firearms to sell firearms at such a gun show or whether New York State law regulating dealers in firearms (as defined in section 265.00[3], of the Penal Law) prohibits the sale of firearms by dealers at New York gun shows.
New York law requires a dealer in firearms to obtain a license which, among other things, states and describes the premises for which it is issued. Such a license is valid only for the premises stated on the license (Penal Law § 400.00[7]). Moreover, a dealer is required to keep a record book at his licensed premises, where sale records must be entered prior to delivery of any firearm (id., § 400.00[12]). Thus, under State law a dealer in firearms is licensed to make sales only at the premises identified in the State license.
In our view, dealers in firearms (as defined in section 265.00[3] of the Penal Law) are prohibited under New York State law from selling firearms at gun shows in New York. Section 923(j) is a recent amendment to the Federal Gun Control Act of 1968. 18 U.S.C. § 921 et seq. The Federal Gun Control Act of 1968 specifically deals with the validity of State laws regulating the same subject:
 "No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together." 18 U.S.C. § 927.
Thus, only provisions of the Gun Control Act of 1968 that are in direct and positive conflict with State law supersede that State law. The question at hand is the meaning of the language "direct and positive conflict".
We believe it is clear from the legislative history of the Federal Gun Control Act of 1968 that more restrictive State laws governing firearms are not superseded by the Federal Act. The House Report accompanying this legislation states that its "principal purpose" is "to strengthen Federal controls over interstate and foreign commerce in firearms and to assist the States effectively to regulate firearms traffic within their borders." H. Rep. No. 1577, 3 U.S. Code Cong. Admin. News 1968, p. 4410 at 4411. The legislation responded to "widespread national concern that existing Federal control over the sale and shipment of firearms [across] state lines is grossly inadequate." Id., at 4413. The Gun Control Act was designed "to control the indiscriminate flow of such weapons across State borders and to assist and encourage States and local communities to adopt and enforce stricter gun control laws." Id., at 4413; emphasis supplied.
In an "Executive Communication" from the Attorney General of the United States to the Speaker of the House of Representatives dated June 10, 1968, requesting the enactment of the Gun Control Law of 1968, it is stated:
 "By recognizing the Federal responsibility to control the indiscriminate flow of firearms and ammunition across State borders, this bill will give States and local communities the capacity and the incentive to enforce effectively their own gun control laws. Once enacted into law, it will insure that strong local or State laws are not subverted by a deadly interstate traffic in firearms and ammunition." Id., at 4425.
Indeed, regulations carrying out the provisions of the Gun Control Act of 1968 provide:
 "A license issued under this part confers no right or privilege to conduct business or activity contrary to State or other law. The holder of such a license is not by reason of the rights and privileges granted by that license immune from punishment for operating a firearm or ammunition business or activity in violation of the provisions of any State or other law."
27 C.F.R. § 178.58. See, Oefinger v Zimmerman, 601 F. Supp. 405,409-410 (USDC WD Pa); Fresno Rifle Pistol Club, Inc. v Van de Kamp,746 F. Supp. 1415 (ED Cal 1990); Coalition of New Jersey Sportsmen vFlorio, 744 F. Supp. 602 (D NJ 1990).
In response to your second question, we conclude that dealers in firearms in New York may not sell firearms (defined in section 265.00[3] of the Penal Law) at a gun show in New York.
You also asked whether an individual violates the terms of his carry permit if he uses it to bring guns to a licensed gun show to display and sell them there. In New York, it is generally accepted that a carry permit may validly restrict the purposes for which the licensed weapon may be carried. See, Matter of Davis v Clyne, 58 A.D.2d 947 (3d Dept 1977),lv denied, 44 N.Y.2d 646 (1978); Matter of Michaelson, supra; 1972 Op Atty Gen 4. If a carry permit is so restricted, its stated limitations may preclude carrying guns for display or sale at gun shows. In the absence of such restrictions, the carry permit may be used for these purposes. See, Penal Law § 400.00(6); 1989 Op Atty Gen (Inf) 169. However, the carry permit cannot support a level of activity at gun shows equivalent to its holder's being "in the business" of dealing in firearms. Such activity, absent a dealer license, would violate Federal dealer registration laws, as well as the New York Penal Law (cf., UnitedStates v Ruisi, 460 F.2d 153 [2d Cir], cert denied, 489 U.S. 914
[1972]). Also, dealers in New York may only sell firearms at the premises specified in the license. Moreover, even casual non-dealer sales of handguns may not be made at gun shows (or elsewhere) unless the seller first reports the sale in writing to the State police or local licensing officer as required by Penal Law § 265.10(7).
Finally, you have asked whether a currently State-licensed dealer may have his license revoked or suspended for failing to maintain and file proper transaction records. We draw your attention to (a) subsection 12 of Penal Law § 400.00, specifying the transaction records which dealers in firearms are required to keep; (b) subsection 15, stating that violation of "any portion of any provision" of section 400.00 is a class A misdemeanor; and (c) subsection 11, stating that a licensee's conviction of "a felony or serious offense" automatically revokes any section 400.00 license and adding that:
 "A license may be revoked and cancelled at any time in the city of New York, and in the counties of Nassau and Suffolk, by the licensing officer, and elsewhere than in the city of New York by any judge or justice of a court of record. The official revoking a license shall give written notice thereof without unnecessary delay to the executive department, division of state police, Albany, and shall also notify immediately the duly constituted police authorities of the locality."
Taken together, we believe that these provisions give ample authority for a judge or justice (or, where appropriate, the licensing officer) to revoke the license of a dealer in firearms for failure to maintain proper records as required by law.
The Attorney General renders formal opinions only to officers and departments of the State government. This perforce is an informal and unofficial expression of views of this office.