## Ann Marie Gustin v. Peter L. Gustin

[536 A.2d 933]

No. 85-203

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes,\* JJ.**

Opinion Filed November 13, 1987

*Chimileski & Associates, P.C.,* Newport, for Plaintiff-Appellant.

**Peck, J.** In April 1985, the parties were granted a divorce by the Orleans Superior Court on grounds that they had lived separate and apart for six consecutive months and that the resumption of marital relations was not reasonably probable. The final decree granted custody of the parties' four children to defendant, Peter L. Gustin, and gave plaintiff, Ann Marie Gustin, visitation rights "of at least every other weekend, alternate school vacations

---

\* Justice Hayes was present for oral argument but did not participate in the decision.

and holidays, and at least four consecutive weeks during the summer." Also, plaintiff was ordered to pay weekly support in the amount of 30% of her net take-home pay. Lastly, the court granted plaintiff a 16% share of the equity in the farm, in the amount of $36,000. Plaintiff appealed to this Court, alleging error in the orders relating to child custody and the distribution of property. We reverse and remand.

Plaintiff argues that the trial court's findings do not state facts essential to the disposition of the case. Plaintiff also contends that the findings are unsupported by the evidence. Lastly, plaintiff notes that because the property settlement is based in part on the custody decree, it, too, is unsupported by the evidence. Defendant filed no responsive brief.

The parties were married in 1971 and operated a dairy farm in Newport. They have four children, whose ages at the time of the decree ranged from four to eleven. Plaintiff has been responsible for the primary care of the children and has had custody of the children, except for one summer, since the separation in 1983.

Outward signs of marital problems appeared in 1983, although the court found that the parties had ceased to communicate with each other sometime before this. In November 1983, plaintiff and defendant separated and she, along with the children, moved off the farm. Within two months, plaintiff and the children began living with Richard McAllister in a trailer provided as partial compensation for McAllister's work as a farmhand. After several months together, McAllister left plaintiff, declaring that he "wanted his freedom." Shortly thereafter, however, plaintiff and McAllister resumed their living arrangement. Part of the original motivation for this living arrangement was plaintiff's financial status; even with assistance from the state, she could not support herself and the children.

Under the present schedule there are significant parts of the day when each parent is unavailable to the children. Plaintiff leaves the children with her mother at 6:15 each morning when she goes to work, and they return to plaintiff's home at the end of each day. The court found that defendant, on the other hand, "kept banker's hours in the morning and lawyer's hours at night," meaning by this that defendant did not go to the barn to do his chores until the children had left for school, and didn't get in from the barn many nights until after the family had gone to bed.

During the time plaintiff has resided with McAllister, the Department of Social and Rehabilitation Services investigated conditions in the home at least once. The trial court found, however, that the evidence did not indicate there had been inappropriate parenting. The court also found that the children seemed to get along well with McAllister, but although he testified that he was committed to plaintiff, the court was not satisfied that such was actually the case. Nevertheless, the court stated that McAllister's presence in the household was not a significant factor in the custody decision.

The court noted that if the children remained with plaintiff, they would have to change schools, and that the children were not looking forward to leaving their friends. The court, however, stated that this was only one additional factor in considering the question of custody.

The court noted that both plaintiff and defendant were loving parents and able to care and provide for the children. However, the court also found that defendant could provide the children with a proper emotional, financial and physical setting on his farm. The court noted that plaintiff's earnings were $8,332.56 in 1984 and that defendant's net income amounted to about $10,000, and ordered plaintiff to pay defendant 30% of her net income as child support. There is nothing in the findings below to indicate that plaintiff would not also be able to provide for the children as adequately as defendant, were she to receive appropriate financial assistance from him.

The plaintiff attacks the court's findings by contending that they fail to state the dispositive facts. "A major purpose of findings is to enable this Court, on appeal, to determine how the trial court's decision was reached." *Mayer* v. *Mayer*, 144 Vt. 214, 216, 475 A.2d 238, 240 (1984) (citing *Valsangiacomo* v. *Paige & Campbell, Inc.*, 136 Vt. 278, 280, 388 A.2d 389, 390-91 (1978)); V.R.C.P. 52(a). In the instant case, the court's findings on the issue of custody could support an award of custody to either parent. In such circumstance, it is incumbent on the trial court to point out what findings tipped the scale in favor of the award it made. *Mayer*, 144 Vt. at 216-17, 475 A.2d at 239-40 (citations omitted); *Jensen* v. *Jensen*, 139 Vt. 551, 553, 433 A.2d 258, 260 (1981). In failing to do so, the trial court leaves this Court to speculate as to the basis for its decision, and this is something we will not do. *Mayer*, 144 Vt. at 216, 475 A.2d at 239-40 (citing *Jensen*, 139 Vt. at 553, 433

A.2d at 260). Therefore, the decision of the trial court regarding custody and child support must be reversed and remanded for a new hearing.

Plaintiff also appeals the trial court's distribution of the marital estate. The trial court has wide discretion in the distribution of property, *Philburt* v. *Philburt*, 148 Vt. 394, 398, 533 A.2d 1181, 1183 (1987) (citing *Emmons* v. *Emmons*, 141 Vt. 508, 510-11, 450 A.2d 1113, 1115 (1982)), however, since a decree which distributes property " 'is final and not subject to modification, . . . the wide discretion given to the trial court in this area must be tempered when the distribution reflects inadequate findings.' " *Sutton* v. *Sutton*, 147 Vt. 639, 640, 523 A.2d 1249, 1250 (1987) (quoting *Emmons*, 141 Vt. at 511, 450 A.2d at 1115). Because the trial court's disposition of the marital estate was based, in part, on the decree of custody which we are remanding for redetermination, the property disposition must be reversed and remanded for a new hearing.

*Reversed and remanded for a new hearing on issues of custody, child support, and property distribution. In all other respects, the judgment is affirmed.*