### Linda Griffith Bassler v. George Paul Bassler and Dolores Bassler

[593 A.2d 82]

No. 89-464

Present: **Allen, C.J., Peck, Gibson, Dooley and Morse, JJ.**

Opinion Filed April 19, 1991

 

*Corsones & Corsones*, Rutland, for Plaintiff-Appellee.

*Robert P. McClallen*, Rutland, for Defendant-Appellant.

*Miller, Cleary & Faignant*, Rutland, for additional Party-Appellant.

**Gibson, J.** Defendant George Bassler and additional party defendant Dolores Bassler (George's mother) appeal from a divorce judgment awarding plaintiff, Linda Griffith Bassler, the sum of $35,000 in satisfaction of any marital or other interest she may have in the lands, premises, and machinery held in George's and Dolores's names. We affirm.

## I.

In September of 1983, Linda and her daughter, Lindsey, moved into a house on the Bassler estate in Wells, Vermont to live with George Bassler. The estate, which contained over 500 acres of land, was owned by Dolores, who lived in a separate residence thereon. The trial court found that Linda was orally assured by Dolores and George that she "did and would own the house and surrounding acreage (200 acres more or less) as the family home." Linda gave up her waitressing and catering jobs, and devoted her energies to the household. The couple made major improvements to their home, which was in great disrepair, and to the surrounding property. In 1986, with Dolores's knowledge, George and Linda took out a homeowner's insurance policy in their own names on their house, paying the premiums themselves.

In late 1984 or early 1985, Linda became pregnant. George agreed to marry her, but only after the execution of an antenuptial agreement. An agreement was prepared by George's attorney, and after several delays, the couple executed it on May 30,

1985, one day before they married. In relevant part, the agreement provided that Linda waived "all and every right whatsoever which she might have or acquire by law by such marriage in any and all property of every kind and character, real, personal, or mixed, now owned or which may hereafter be acquired by George P. Bassler."

Linda and George separated in August of 1988. Since the separation, George has continued to live on the estate; Linda, her daughter Lindsey, and Adam, who was born during the marriage, moved out and have been receiving assistance from the Department of Social Welfare.

On September 17, 1988, Linda filed a complaint for divorce. Thereafter, she moved to add Dolores Bassler as a party to the action. The trial court granted the motion "in an effort to pierce the veils which [Dolores] and George place around their assets." At trial, the extent of George's assets was obscured by a number of partially explained transactions. The court found, however, that George always had sufficient funds to meet his needs and desires, even though he had no regular paycheck or earnings record consistent with his lifestyle. When the family well-drilling business was liquidated during 1985 and 1986, George received $81,000 and Dolores withdrew $32,000, which she turned over to George. In 1986, George paid $43,000 for property in Wells that was sold in 1988 without profit. Also during the marriage, George purchased real property in Maine, putting it in Linda's name and subsequently selling it, apparently for a loss. The court awarded Linda $35,000 as her share of the marital assets.

On appeal, George and Dolores contend that (1) the Statute of Frauds bars Linda from asserting a marital interest in the house and surrounding land, and (2) the antenuptial agreement is valid and should have been enforced by the trial court. George also contends that the court made inadequate findings to support its award of $35,000 to Linda. Dolores argues that she was improperly added as a party.

## II.

George and Dolores both assert that (1) there was no oral agreement regarding the house and surrounding land, and (2)

even if there was such an agreement, the Statute of Frauds[1] bars enforcement because Linda's part performance is insufficient to remove the agreement from the statute. Dolores argues additionally that the part-performance doctrine does not apply unless money damages are an inadequate remedy and that, in the instant case, the trial court implicitly acknowledged money damages to be adequate inasmuch as it awarded Linda a sum of money. Linda responds that (1) sufficient part performance has been shown, and (2) inadequacy of money damages is not a prerequisite to invoking the part-performance doctrine. We address appellants' arguments seriatim.[2]

## A.

■ George and Dolores first argue that there was no oral agreement with respect to the property. The trial court found that "Linda was assured by George and George's mother, Dolores[,] that the guest house was her family home and notwithstanding the various maneuverings between George and his

---

[1] The cited provisions are 12 V.S.A. § 181 and 27 V.S.A. § 302. 12 V.S.A. § 181 provides in pertinent part:

An action at law shall not be brought in the following cases unless the promise, contract or agreement upon which such action is brought or some memorandum or note thereof is in writing, signed by the party to be charged therewith or by some person thereunto by him lawfully authorized:

. . .

(5) A contract for the sale of lands, tenements or hereditaments, or of an interest in or concerning them. Authorization to execute such a contract on behalf of another shall be in writing.

27 V.S.A. § 302 provides:

Estates or interests in lands, created or conveyed without an instrument in writing shall have the effect of estates at will only. An estate or interest in lands shall not be assigned, granted or surrendered unless by operation of law or by a writing signed by the grantor or his attorney.

[2] The parties have not raised the threshold issue of whether or under what circumstances the Statute of Frauds applies to an asserted marital interest in real property held in the name of a third person. See *Stamato v. Quazzo*, 139 Vt. 155, 158, 423 A.2d 1201, 1204 (1980) (Statute of Frauds inapplicable in an equitable action based on fraud and arising out of an out-of-state divorce, where the Vermont real property was held in a third person's name); 15 V.S.A. § 751(a) ("Title to the property, whether in the name of the husband, the wife, both parties, or a nominee, shall be immaterial . . . ."). In the instant case, we assume, for purposes of argument, that the Statute of Frauds is applicable.

mother Dolores, Linda did and would own the house and surrounding acreage (200 acres more or less) as the family home." On appeal, we must view the evidence in the light most favorable to the prevailing party, excluding the effect of modifying evidence. Only if a finding is clearly erroneous can it be overturned. *McCormick v. McCormick*, 150 Vt. 431, 434, 553 A.2d 1098, 1101 (1988). "Where there is a dispute in the testimony, it is up to the trial court, which can better judge the credibility of the witnesses, to resolve the dispute." *Klein v. Klein*, 150 Vt. 466, 469, 555 A.2d 382, 384 (1988).

■ In the instant case, George denied the existence of any oral agreement concerning the property, whereas Dolores, who never testified, admitted in her pleadings that there was an agreement to transfer the property, but that it was made with George only. Linda testified that an agreement was reached whereby she and George would purchase the property from Dolores for $200,000, to be paid in monthly installments of $600, with interest paid by plowing Dolores's driveway and maintaining her lawn. Linda also testified that they have paid $33,000 toward the purchase price. Moreover, as known to Dolores, George and Linda purchased a homeowner's insurance policy in their own names for the period of March 24, 1986 to March 24, 1987, and they later renewed the policy for an additional three years. Indisputably, there is a conflict in the evidence. After careful review of the record, we cannot conclude that the trial court's finding that there was an agreement is clearly erroneous.

### B.

■ George and Dolores acknowledge that, under the doctrine of part performance, an oral agreement may be removed from the Statute of Frauds and enforced when the party claiming an agreement can show that, in reliance on the agreement, he or she suffered a substantial and irretrievable change in position. See *Jasmin v. Alberico*, 135 Vt. 287, 289–90, 376 A.2d 32, 33 (1977). They contend, however, that Linda did not suffer such a substantial and irretrievable change in circumstances.

■ Initially, we disagree with George and Dolores that only the actions of Linda, and not those of George, can be consid-

ered. If either George or Linda, or the two of them together, have an interest in the property, that interest is part of the marital estate and subject to the jurisdiction of the court. See 15 V.S.A. § 751(a), (b)(6).[3] Thus, we consider the actions of both Linda and George.

In *Jasmin*, we held that improvements such as "repairing a back porch, having gas piped to the house, making electrical and plumbing repairs and doing some landscaping" were indistinguishable from those of a tenant responsible for maintenance of leased premises and did not amount to a substantial and irretrievable change of position. 135 Vt. at 290, 376 A.2d at 34. The renovations made by George and Linda Bassler are, however, of a materially different nature from the repairs and improvements made in *Jasmin*. George and Linda installed hot water heaters, insulation, new siding, new flooring, a new furnace, and new windows and window frames; excavated and graded a road to the house; removed a barn; built a deck; and drained and cleared the brush around a pond. These activities show a substantial and irretrievable change in the position of Linda and George, and are more than enough to support the decision of the trial court to take the agreement out of the Statute of Frauds.

## C.

Dolores contends that a prerequisite to invoking the part-performance doctrine is the inadequacy of money damages,

---

[3] 15 V.S.A. § 751 provides in pertinent part:

 (a) Upon motion of either party to a proceeding under this chapter [relating to annulment and divorce], the court shall settle the rights of the parties to their property, by including in its judgment provisions which equitably divide and assign the property. All property owned by either or both of the parties, however and whenever acquired, shall be subject to the jurisdiction of the court. Title to the property, whether in the names of the husband, the wife, both parties, or a nominee, shall be immaterial, except where equitable distribution can be made without disturbing separate property.

 (b) In making a property settlement the court may consider all relevant factors, including but not limited to:

 . . . .

 (6) the value of all property interests, liabilities, and needs of each party . . . .

pointing out that the trial court ordered that Linda be paid $35,000 for her interest in the marital estate. Linda concedes that inadequacy of money damages is a prerequisite for specific performance, but contends that it is not a requirement for application of the part-performance doctrine.

Dolores and George never raised this argument before the trial court and have, therefore, waived it. *American Trucking Ass'ns v. Conway*, 152 Vt. 383, 387, 566 A.2d 1335, 1337 (1989) ("issues not raised before the trial court are waived on appeal"). Nevertheless, we point out that Linda made no request for specific performance. Instead, she merely requested that the court consider the marital interest in the house and surrounding land when it distributed the marital assets. See 15 V.S.A. § 751. Given the posture of the case, the trial court was not required to—and did not—determine if specific performance was appropriate. On the record before us, we decline to address the issue.[4]

### III.

George and Dolores alternatively contend that George and Linda's antenuptial agreement is valid and should control the distribution of any marital assets. In support of this contention, George maintains that the procedural requirements of voluntariness and disclosure were met. Dolores argues that Linda failed to meet her burden of showing by clear and convincing

---

[4] We note, however, that our cases do not always clearly distinguish between the reliance necessary to warrant application of the part-performance doctrine and the prerequisites for specific performance. Compare *Chomicky v. Buttolph*, 147 Vt. 128, 131–32, 513 A.2d 1174, 1176 (1986) (in determining whether to take oral contract out from under the Statute of Frauds in action for specific performance, the court only addressed whether equities required under the part-performance doctrine were sufficient), with *Jasmin v. Alberico*, 135 Vt. 287, 289, 376 A.2d 32, 33 (1977) (in absence of a writing, proponent of specific performance has a double burden: (1) establishing an agreement enforceable in the face of the Statute of Frauds, and (2) meeting the standards for specific performance), and *Towsley v. Champlain Oil Co.*, 127 Vt. 541, 542–43, 254 A.2d 440, 441 (1969) (one seeking specific performance of an oral contract to sell land needs two stages of equitable relief to prevail: (1) must show that "equitable considerations justified taking the contract out from under the Statute of Frauds," and (2) must justify having contract specifically enforced).

evidence that the agreement was entered into as a result of fraud, duress, or coercion.[5]

The enforceability of an antenuptial agreement is governed by consideration of whether [1] "each spouse has made fair and reasonable disclosure to the other of his or her financial status[,] [2] each spouse has entered into the agreement voluntarily and freely[,] and [3] the substantive provisions of the agreement dividing the property upon divorce are fair to each spouse." *Button v. Button*, 131 Wis. 2d 84, 99, 388 N.W.2d 546, 548 (1986). Public policy bars enforcement of an antenuptial agreement that is unconscionable at the time it is executed. See *Padova v. Padova*, 123 Vt. 125, 129, 183 A.2d 227, 230 (1962) ("In the absence of evidence of fraud or unconscionable advantage taken at the time of execution, the parties themselves are bound according to the terms of the contract."); see also *Rogers v. Rogers*, 135 Vt. 111, 112, 373 A.2d 507, 509 (1977) (if out-of-state separation agreement "is valid where made, it will be interpreted here according to the law of the state of its making, so long as to do so will not violate the public policy of the State of Vermont"). Additionally, where, at the time of the divorce, an antenuptial agreement leaves one spouse a public charge, or close to it, the agreement may be unenforceable as against public policy. See *Osborne v. Osborne*, 384 Mass. 591, 599, 428 N.E.2d 810, 816 (1981) ("agreement must be fair and reasonable at the time of entry of the judgment nisi, and it may be modified by the courts in certain situations, for example, where . . . one spouse is or will become a public charge"); *MacFarlane v. Rich*, 132 N.H. 608, 616, 567 A.2d 585, 591 (1989) (when "enforcement of an antenuptial agreement would result in the spouse becoming a public charge . . . the State's interest in protecting the welfare of the spouse, and mitigating the hardship occasioned by divorce, compels judicial reformation of the contract"). As aptly stated by one court:

> Clearly there must be some level of "unconscionability" which would bar enforcement of an antenuptial agreement

---

[5] The parties have not raised the issue of whether Dolores has standing inasmuch as she was not a party to the agreement and may not have been an intended beneficiary of it. Given our disposition of the case, we need not address the issue.

no matter what disclosure had been made. An agreement which would leave a spouse a public charge or close to it, or which would provide a standard of living far below that which was enjoyed both before and during the marriage would probably not be enforced by any court.

*Marschall v. Marschall*, 195 N.J. Super. 16, 30–31, 477 A.2d 833, 840–41 (1984).

■ At the time of the hearing, Linda was receiving public assistance. In contrast, the trial court found that George always had sufficient means to meet his desires and needs. Under these circumstances, we have no hesitation in holding, as a matter of law, that the antenuptial agreement violates public policy and should not be enforced.

■■ Dolores also argues that the trial court improperly admitted Linda's testimony that George insisted she sign the agreement before the marriage, and that she was induced to sign by the pending wedding and her advanced pregnancy. Dolores claims that this testimony sought to contradict or negate the terms of the agreement because it was inconsistent with the agreement's acknowledgement clause and was therefore barred as parol evidence. Under the parol evidence rule, "oral testimony is inadmissible to vary or to add to the terms" of a written contract. *Sachse v. Lumley*, 147 Vt. 584, 587, 524 A.2d 599, 601 (1987). Evidence of unconscionability, however, does not offend the parol evidence rule, because such evidence may be offered to disaffirm or avoid the "binding force" of the contract. See *Holbrook Grocery Co. v. Armstrong*, 97 Vt. 197, 201, 122 A. 458, 460 (1923). In the instant case, Linda's testimony did not serve to vary or add to the terms of the written agreement; instead, it was introduced to challenge the "binding force" of the agreement and was, therefore, properly admitted.

## IV.

■■ George contends that the trial court made inadequate findings to support its conclusion that Linda is entitled to $35,000 as her share of the marital assets. The court's distribution of the marital property will not be disturbed absent a showing that it abused its wide discretion. *Leonard v. Leonard*, 150 Vt. 202, 203, 552 A.2d 394, 395 (1988). Although the court cannot

leave the basis for its decision to speculation, *Gustin v. Gustin*, 148 Vt. 563, 565, 536 A.2d 933, 935 (1987), we will uphold the decision where the findings reasonably support the judgment. *Bonanno v. Bonanno*, 148 Vt. 248, 251, 531 A.2d 602, 603 (1987). In the instant case, the trial court concluded that the "machinations" of George and Dolores hindered efforts to "pierce the veils . . . around their assets." The court noted that George and Linda purchased a homeowner's insurance policy with a $108,000 declared value for the house they occupied. Further, the evidence discloses a substantial distribution to George from the dissolution of the well-drilling business, which occurred two to three years before the filing of the divorce action. The trial court had no alternative but to distribute the marital assets as best it could. See *Klein v. Klein*, 150 Vt. at 471, 555 A.2d at 385; *Ruhe v. Ruhe*, 142 Vt. 429, 432, 457 A.2d 628, 630 (1983). Given the circumstances, we have no difficulty holding that the evidence supports the court's findings, which reasonably support its judgment.

## V.

In her reply brief, Dolores raises for the first time the argument that she should not have been joined as a party to this action. This issue was not raised, however, in her original brief. Under V.R.A.P. 28(c), "[o]ur law is clear that issues not raised in an appellant's original brief may not be raised for the first time in a reply brief." *Maynard v. Travelers Ins. Co.*, 149 Vt. 158, 160, 540 A.2d 1032, 1033 (1987). We therefore decline to address this argument.

*Affirmed.*