CONKLE, Appellee,

v.

WOLFE, Appellant.

[Cite as *Conkle v. Wolfe* (1998), 131 Ohio App.3d 375.]

Court of Appeals of Ohio,
Fourth District, Athens County.

No. 98CA2.

Decided Nov. 18, 1998.

376

378

*Rebecca A. Baird* and *Southeastern Ohio Legal Services,* for appellee.

*Robert L. Wolfe, pro se.*

_____

KLINE, Judge.

Robert L. Wolfe appeals the Athens County Court of Common Pleas' civil protection order, pursuant to R.C. 3113.31, enjoining him from contacting or harassing Doris Conkle. On appeal, Wolfe contends that the trial court retrospectively applied R.C. 3113.31 as amended by 1997 Am. Sub. S.B. No. 1 ("Senate Bill 1"). We disagree, because Wolfe committed one or more incidents of domestic violence after the effective date of the amended statute. Wolfe asserts that the trial court's judgment is against the manifest weight of the evidence. We disagree, because the record contains competent, credible evidence to support the trial court's finding of domestic violence. Wolfe argues that the trial court abused its discretion by failing to continue the full hearing on the civil protection order. We disagree. Finally, Wolfe asserts that the trial court committed prejudicial error by applying the remedy contained in Section 922, Title 18, U.S.Code without specifically finding him to be a credible threat to the physical safety of an intimate partner or child. We disagree, because R.C. 3113.31 is not an obstacle to the accomplishment and execution of the full purpose and objectives of Congress embodied in the Gun Control Act.

Accordingly, we affirm the judgment of the trial court.

I

On November 24, 1997, Conkle filed a verified petition of domestic violence against Wolfe pursuant to R.C. 3113.31. Conkle attached an affidavit in support of the petition that alleged that Wolfe threatened her with a weapon, threatened to kill her and her children, and continuously contacted her by phone and mail. The court issued an *ex parte* order restraining Wolfe from contacting Conkle or her children.

On December 3, 1997, the trial court conducted a full hearing on Conkle's petition. Neither Conkle nor Wolfe was represented by counsel. Wolfe moved to continue the hearing until after the Athens Municipal Court conducted his trial on stalking charges that arose from the same circumstances that led Conkle to petition the court for a civil protection order. Conkle responded that the municipal court might continue Wolfe's December 11, 1997 trial date because of his pending competency evaluation. The trial court overruled Wolfe's motion.

Conkle testified that she and Wolfe lived together for approximately one and one-half years, then lived separately after January 1996. Because Conkle feared

for her life and the lives of her children, Conkle testified, that she filed stalking complaints against Wolfe on several different occasions.

Conkle testified that in 1995, Wolfe repeatedly threatened her with a gun and threatened to kill himself in front of Conkle and her daughter. After Wolfe ransacked her home, police apprehended Wolfe with seven hundred twenty-two rounds of ammunition in his vehicle, and two or three guns. In response, Conkle filed a complaint against Wolfe. The Athens Municipal Court convicted Wolfe of stalking, in violation of R.C. 2903.211, and sentenced Wolfe to ninety days in jail but suspended Wolfe's sentence.

On June 20, 1997, Conkle testified she received phone calls throughout the night. A man, who Conkle strongly suspected was Wolfe, drove his car to her home, stopped, and stated that he had a gun. Conkle reported the incident to the police, and they charged Wolfe with aggravated menacing, in violation of R.C. 2903.21. In September 1997, Wolfe called Conkle's answering machine and stated that she would be "surprised" on his court date for pending stalking charges. In November 1997, Wolfe left a book in the Athens Municipal Court titled *Never Cry Wolfe* and wrote "learn and let live" under the title. As a result, the court reimposed Wolfe's suspended sentence on his 1995 stalking conviction and the state charged Wolfe with intimidating a witness, in violation of R.C. 2921.04.

Wolfe testified that he did not drive by Conkle's house on June 20, 1997, or threaten Conkle or her children. Wolfe admitted leaving the message on Conkle's answering machine and the book with the inscribed message in municipal court.

The trial court found that Wolfe had engaged in domestic violence against Conkle. The court issued a civil protection order which restrains Wolfe for five years from abusing Conkle, contacting her, tampering with her property, and possessing alcohol or deadly weapons. The court also ordered Wolfe to complete a domestic violence intervention program and substance abuse counseling.

Wolfe appeals the judgment of the trial court. Wolfe failed to comply with App.R. 16(A)(3) and (4), which require that an appellant set forth the assignments of error presented for review, with reference to the place in the record where each error is reflected, and a statement of issues presented for review, with references to the assignments of error to which each issue relates. Pursuant to App.R. 12(A)(2), we may disregard an assignment of error presented for review if the appellant fails to argue the assignment of error separately in the brief. Appellee, however, has set forth assignments of error that she believes represent Wolfe's legal arguments. Therefore, in the interests of justice and equity, we will address Wolfe's assignments of error on the merits, as set forth in appellee's brief:

"I. The trial court committed reversible error by entering a civil protection order against the appellant contrary to the manifest weight of the evidence.

"II. The trial court committed reversible error by not allowing a continuance for the appellant to consult with counsel and contact witnesses.

"III. The trial court committed reversible error by applying the definition of persons living as spouse under the civil domestic violence statute, R.C. 3113.31 as amended by Senate Bill 1 on October 21, 1997, retroactively.

"IV. The trial court committed reversible error in applying 18 U.S.C. Title, Section (g)(8)(c)(I) [sic] without a specific finding of credible threat to the physical safety of an intimate partner or child."

As our resolution of Wolfe's third assignment of error could directly affect our review of his first two assignments of error, we first address whether the trial court retrospectively applied R.C. 3113.31 as amended by Senate Bill 1.

## II

Wolfe contends that the trial court retrospectively applied the version of R.C. 3113.31 amended by Senate Bill 1, because the incidents of the domestic violence about which Conkle testified occurred before the date the amended statute became effective, October 21, 1997. Wolfe contends that the trial court should have applied the previous version of R.C. 3113.31, which defined a "person living as a spouse" as a person who lived with the alleged perpetrator within one year of the domestic violence incident. Sub. H.B. No. 274, 146 Ohio Laws, Part II, 3423. As Wolfe had not lived with Conkle for approximately one and one-half years when the June 20, 1997 incidents occurred, Conkle did not meet the definition of a "person living as a spouse" pursuant to the previous version of R.C. 3113.31(A)(4). Therefore, Wolfe contends, he did not commit domestic violence.

Conkle argues that she fulfills the definitional requirement of a "person living as a spouse" under either version of the statute. Alternatively, Conkle asserts that the trial court properly applied the version of R.C. 3113.31 as amended by Senate Bill 1 because Wolfe committed acts of domestic violence after the effective date of the statute.

We note that Wolfe did not raise the argument that the trial court unconstitutionally and retrospectively applied R.C. 3113.31 as amended by Senate Bill 1 during the full hearing. Failure to raise the issue of the constitutionality of a statute or its application is a waiver of the issue. *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, syllabus; *Snyder v. Snyder* (Aug. 15, 1995), Ross App. No. 94CA2068, unreported, 1995 WL 493998. Therefore, we need not address this issue for the first time on appeal. *Id.* However, even if

Wolfe properly raised the issue at the trial court level, we find that his argument is without merit.

We presume that the laws that the General Assembly enacts regulate future conduct. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 104, 522 N.E.2d 489, 494. Thus, retroactive laws and retrospective application of laws are presumptively unconstitutional and illegal. *Id.*

Section 28, Article II of the Ohio Constitution states that "[t]he general assembly shall have no power to pass retroactive laws." The issue of whether a court may constitutionally apply a statute retrospectively does not arise unless the court first determines that the General Assembly specified that the statute so apply. *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections* (1995), 72 Ohio St.3d 69, 73, 647 N.E.2d 769, 772–773. To decide whether the General Assembly intended for a statute to apply retrospectively, courts must apply the cannon of statutory construction embodied in R.C. 1.48. R.C. 1.48 provides that a court must presume a statute is prospective in its operation unless the legislature expressly made the statute retrospective.

Pursuant to both versions of R.C. 3113.31, a trial court may, in an *ex parte* proceeding, issue a temporary civil protection order when the court finds an "immediate and present danger of domestic violence to the family or household member." R.C. 3113.31(D). "Domestic violence" means either (1) attempting to cause bodily injury to a family member or (2) placing a family member in fear of imminent serious physical harm by threat of force. R.C. 3113.31(A)(1)(a) and (b). "Family or household member" includes a person living with the respondent as a spouse. R.C. 3113.31(A)(3)(a)(iii). The former R.C. 3113.31(A)(4) defined "person living as a spouse" as a person who "cohabitated with the respondent within one year prior to the date of the alleged occurrence of the act in question." R.C. 3113.31 as amended by Senate Bill 1 extends the period of cohabitation to five years before the date of the alleged occurrence of the act in question.

R.C. 3113.31 as amended by Senate Bill 1 became effective October 21, 1997. Neither the statute nor Senate Bill 1 provides any specification that the General Assembly intended for the statute to apply to acts before its effective date. Therefore, we follow the presumption that the General Assembly intended that the amended version of the statute applies only to acts committed after the date that the statute became effective.

We must next determine whether the trial court retrospectively applied R.C. 3113.31 as amended by Senate Bill 1. In November 1997, Wolfe left a book in the Athens Municipal Court titled *Never Cry Wolf,* upon which Wolfe wrote "learn and let live." The written threat made by Wolfe in November 1997

occurred after October 21, 1997. Therefore, we find that the trial court properly applied the amended version of R.C. 3113.31 to Wolfe's case.

Accordingly, we overrule Wolfe's third assignment of error.

### III

In his first assignment of error, Wolfe argues that the trial court's finding that he engaged in domestic violence against a family member was against the manifest weight of the evidence and therefore that the trial court erred by issuing a civil protection order. We presume that the findings of the trial court are correct, because the trial court can view the witnesses and weigh the credibility of the proffered testimony. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276–1277. Thus, we will not reverse the trial court's decision for being contrary to the manifest weight of the evidence if the judgment is supported by some competent, credible evidence going to the essential elements of the case. *Felton v. Felton* (1997), 79 Ohio St.3d 34, 42, 679 N.E.2d 672, 677–678, paragraph two of the syllabus; *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

As stated in Section II, above, for the purposes of obtaining a civil protection order, a person commits domestic violence if he places a family member in fear of imminent serious physical harm by threat of force. R.C. 3113.31(A)(1)(b). Threats of violence constitute domestic violence for the purposes of R.C. 3113.31 if the fear resulting from those threats is reasonable. *Eichenberger v. Eichenberger* (1992), 82 Ohio App.3d 809, 815, 613 N.E.2d 678, 681–682. The reasonableness of the fear felt by the petitioner should be determined with reference to her history with the respondent. *Id.* at 816, 613 N.E.2d at 682–683.

At the hearing, Conkle testified, and Wolfe admitted, that in November 1997, Wolfe left a book titled *Never Cry Wolfe,* inscribed with the phrase "live and let learn" in the Athens Municipal Court. In the past, Wolfe threatened to kill himself, Conkle, and her children, ransacked her home, and harassed her by phone and mail. Conkle testified that because of Wolfe's actions, she feared for her life and the lives of her children. Based upon this testimony, we find competent, credible evidence to support the trial court's finding that Wolfe placed Conkle in reasonable fear of imminent serious physical harm by threat of force. See R.C. 3113.31; *Eichenberger v. Eichenberger,* 82 Ohio App.3d at 815, 613 N.E.2d at 681–682. Thus, the trial court's finding that Wolfe engaged in domestic violence against Conkle is also supported by competent, credible evidence.

Accordingly, we overrule Wolfe's first assignment of error.

## IV

In his second assignment of error, Wolfe asserts that the trial court erred by denying his request for a continuance of the full hearing. A trial court may grant a continuance of the full hearing to a reasonable time determined by the court if one of the following occurs: the respondent has not been served with the petition and notice of the hearing, the parties consent to the continuance, a party wishes to obtain counsel, or the continuance is needed for any other good cause. R.C. 3113.31(D)(2)(a)(i) through (iv). A trial court has discretion when deciding to grant or deny a motion for a continuance. See *Midland Steel Prods. Co. v. U.A.W. Local 486* (1991), 61 Ohio St.3d 121, 130–131, 573 N.E.2d 98, 105–106. Absent an abuse of that discretion, a reviewing court will not disturb the trial court's ruling. *Id.* An abuse of discretion connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137, 566 N.E.2d 1181, 1183–1184.

We find no evidence that the trial court abused its discretion by denying Wolfe's request for a continuance. Wolfe requested the continuance of the hearing date pending the completion of his trial on charges in Athens Municipal Court, set for trial on December 11, 1997, approximately three weeks after the hearing. The record shows that Wolfe was served with a copy of the petition and notice of the hearing. Conkle did not agree to the continuance, and indeed indicated that the trial date could be set back pending a competency evaluation. Although Wolfe now asserts that he needed the continuance to consult with counsel, he did not raise the issue with the trial court and does not support his argument with any other reason why the court should have granted the continuance. Therefore, the trial court did not abuse its discretion in overruling Wolfe's motion to continue the hearing date.

Accordingly, we overrule Wolfe's second assignment of error.

## V

In his fourth assignment of error, Wolfe asserts that the trial court erred in ordering a remedy provided for in Section 922(g)(8)(c)(I), Title 18, U.S.Code without specifically finding him to be a "credible threat" to the physical safety of an intimate partner. Furthermore, Wolfe contends that even if the trial court had applied the federal statute and found him to be a credible threat, the trial court erred by excessively restricting his right to possess firearms. Specifically, Wolfe asserts that we should relieve him from the trial court's order barring him from possessing firearms because Section 925(a)(2), Title 18, U.S.Code entitles

him to possess firearms for the limited purpose of engaging in military training and competitions.

Wolfe is correct in his assertion that the trial court did not make a specific finding that Wolfe represented a "credible threat" to Conkle. We note that "credible threat" and a threat that would place a reasonable person in fear of imminent serious physical harm carry very similar, if not synonymous, meanings. Notwithstanding that lack of distinction, we further note that the trial court was not required to make such a finding, as the trial court did not issue the protection order pursuant to Section 922, Title 18, U.S.Code.

Wolfe did not raise the argument that the trial court unconstitutionally applied a state statute in favor of a federal statute in violation of the Supremacy Clause of the United States Constitution. Article VI, United States Constitution. Failure to raise the issue of the constitutionality of a statute or its application constitutes a waiver of the issue. *State v. Awan, supra,* syllabus; *Snyder v. Snyder, supra.* Therefore we need not address this issue for the first time on appeal. *Id.* However, even if Wolfe properly raised the issue at the trial court level, we find no violation of the Supremacy Clause.

 The federal preemption doctrine is based upon the Supremacy Clause of Article VI, United States Constitution, and holds that any state law must yield if it interferes with, or is contrary to, federal law. See, generally, *Fid. Fed. S. & L. Assn. v. de la Cuesta* (1982), 458 U.S. 141, 152, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664, 674–675. Federal law nullifies state law only to the extent that the state law actually conflicts with federal law. *Holm v. Smilowitz* (1992), 83 Ohio App.3d 757, 767, 615 N.E.2d 1047, 1053–1054, citing *Ray v. Atlantic Richfield Co.* (1978), 435 U.S. 151, 158, 98 S.Ct. 988, 994–995, 55 L.Ed.2d 179, 188–189. A conflict exists when, under the facts and circumstances of the case, the state law " 'stands as an obstacle to the accomplishment and execution of the full purpose and objective of Congress.' " *Holm,* 83 Ohio App.3d at 767, 615 N.E.2d at 1054, quoting *Ray v. Atlantic Richfield Co., supra,* at 158, 98 S.Ct. at 994, 55 L.Ed.2d at 188–189.

Section 922(g)(8), Title 18, U.S.Code prohibits any person who is restricted by a restraining order, which includes a finding that such person represents a credible threat to the physical safety of an intimate partner or child, from shipping, transporting, or possessing any firearm or ammunition. R.C. 3113.31(E)(1)(a)-(h) provides the types of injunctions a court may order when granting a civil protection order, including "other relief that the court considers equitable and fair."

 The legislative history of the Gun Control Act of 1968, Section 921, *et seq.,* Title 18, U.S.Code shows that Congress intended to provide for better

control of the interstate traffic in firearms. According to the House Report accompanying this legislation, the principal purpose of the enactment was " 'to strengthen Federal Controls over interstate and foreign commerce in firearms and to assist the States effectively to regulate firearms traffic within their borders.' " *Oefinger v. Zimmerman* (W.D.Pa. 1984), 601 F.Supp. 405, 409, affirmed (1985), 779 F.2d 43, quoting H.Rep. No. 1577, 3 U.S.Code Cong. & Admin. News 1968, at 4411. Congress passed the legislation to respond to widespread national concern that the increasing rate of crime and use of firearms in violent crimes required a strengthening of firearm regulations. *Id.* Congress designed the Gun Control Act " 'to * * * encourage States and local communities to adopt and enforce stricter gun control laws.' " *Id.*, quoting H.Rep. No. 1577, 3 U.S.Code Cong. & Admin. News 1968, at 4413.

As for the legislation's effect on state law, Congress provided that "[n]o provision of this chapter shall be construed as indicating an intent on the part of Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together." Section 927, Title 18, U.S.Code.

▇▇▇▇▇ The federal scheme to regulate interstate traffic in firearms does not displace the state's power to restrict certain individuals from possessing weapons. Ohio law does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress that are reflected in the Gun Control Act. Congress designed the Gun Control Act to assist states in regulating firearms within their own borders, not to prevent states from regulating firearms within their borders. Therefore, the trial court did not need to find Wolfe to be a "credible threat" in order to enjoin him from possessing weapons. The trial court only had to comply with R.C. 3113.31 and determine that Wolfe committed domestic violence and that enjoining him from possessing firearms was fair and equitable.

Accordingly, we overrule his fourth assignment of error and affirm the judgment of the trial court.

## VI

In conclusion, we find that the trial court applied the correct version of R.C. 3113.31 to Wolfe's case. We find that the trial court's civil protection order was supported by competent, credible, evidence. We also find that the trial court did not abuse its discretion by denying Wolfe's motion for a continuance. Finally, we

find that R.C. 3113.31 does not obstruct the accomplishments and execution of the full purpose and objectives of the Gun Control Act.

Accordingly, we affirm the judgment of the trial court.

*Judgment affirmed.*

PETER B. ABELE and HARSHA, JJ., concur.