# Ellyn Benson v. Vincent Muscari

[769 A.2d 1291]

No. 99-142

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed February 2, 2001

*Sara Kagle* and *Geoffry F. Walsh, Vermont Legal Aid, Inc.,* Springfield, for Plaintiff-Appellee.

*William E. Kraham,* Brattleboro, for Defendant-Appellant.

**Morse, J.** Defendant Vincent Muscari appeals from a final relief-from-abuse order issued to plaintiff Ellyn Benson. Defendant challenges certain conditions of the order, claiming: (1) the 1000-foot buffer-zone restriction violated his constitutional rights and represented an abuse of discretion; (2) the firearms and deadly weapons restrictions were vague, overbroad, and unsupported by the evidence and findings; (3) it was error to include the minor child in the order; and (4) the findings were inadequate to support the five-year period of the order. We uphold all of the challenged conditions except for the restriction on possession of deadly weapons, which in the context of this case was vague and overbroad, and remand for reconsideration of that issue.

The final order for relief from abuse resulted from a violent incident in plaintiff's home. Although they had not lived together or had children, plaintiff and defendant had a sexual relationship for five years and, thus, were "household members" as defined in 15 V.S.A. § 1101(2). On the evening in question, defendant entered plaintiff's home without announcing his presence and encountered plaintiff in her second-floor bedroom with another man. Defendant then physically assaulted plaintiff, punching her in the face and dragging her by her arms down to the main floor. Defendant told her that she would pay for the rest of her life for her behavior. He destroyed much of the kitchen. A state trooper who arrived at the scene found plaintiff "covered in blood from head to toe" with blood "running off her in streams." At the hearing, plaintiff testified that defendant once told her that if she was ever with another man, he would kill both of them.

She also testified that defendant had possessed firearms in the past, and was uncertain whether he still possessed them.

At the time of the hearing, plaintiff lived in Westminster with her nine-year-old daughter, who is not related to defendant. Plaintiff testified that she cleaned homes in the area, and worked in an egg-roll business in Putney. Her daughter attended school in Putney. Defendant resided in Brattleboro.

Based on the foregoing, the trial court found that plaintiff had been abused by defendant, and that she and her daughter were in immediate danger of further abuse. The court issued a relief from abuse order containing a number of terms, four of which are disputed here:

> (1) Defendant was ordered not to "place himself within 1000 feet of Plaintiff individually."

> (2) Defendant was ordered not to contact or harass plaintiff's child and not to place himself within 1000 feet of the child.

> (3) Defendant was ordered "not to be in possession or control of any firearms or dangerous weapons — excepting restaurant cutlery — which shall not be in his possession off restaurant premises."

> (4) The order provided that it would remain in effect for five years, until February 10, 2004.

Defendant first challenges the validity of the 1000-foot buffer zone on the grounds that it is impossible for him to comply with the restriction, and that it will subject him to criminal responsibility despite his inability to comply. He asserts that the order denies him due process of law, and violates his right to live in the community, to associate with others, and to travel. In making these arguments, defendant acknowledges that the Abuse Prevention Act specifically authorizes "restrictions prohibiting the defendant from coming within a fixed distance of the plaintiff, the children, the plaintiff's residence, or other designated locations where the plaintiff or children are likely to spend time." 15 V.S.A. § 1103(c)(1). He notes, however, that he lives in an area where plaintiff is likely to shop or visit, and asserts that he might inadvertently violate the 1000-foot limit if he fails to recognize her from that distance.

It is well documented that "stay away" provisions, including buffer zones of protection, implement important policy objectives underlying abuse prevention orders. They are specific and definite, minimizing interpretation issues. See generally C. Klein & L. Orloff, *Providing*

*Legal Protection for Battered Women: An Analysis of State Statutes and Case Law*, 21 Hofstra L. Rev. 801, 922-23 (1993). They prohibit what otherwise may be viewed as inoffensive contact before it matures into further incidents of abuse. See *id.* At 922 (clear and forceful stay away orders "ensure that the beating which brought the petitioner to court to obtain the order is her last"); *State v. Goyette*, 166 Vt. 299, 302, 691 A.2d 1064, 1066 (1997) (order may "prohibit otherwise legitimate conduct to prevent future abuse"). And they provide the victim a measure of emotional security from fear of further contact with the abuser. See *State v. Hauge*, 547 N.W.2d 173, 176 (S.D. 1996) (one purpose of restraint on abuser's conduct is to preserve "the mental and emotional health of the vulnerable," which prevails over "other less compelling interests"). We conclude, therefore, that these important policy goals are sufficient to justify the incidental restrictions they may impose on defendant's freedom of travel and association. See *Coyle v. Compton*, 940 P.2d 404, 414 (Haw. Ct. App. 1997) (freedom of movement is not absolute and may be restricted, without offending constitutional guarantees, by a specifically-tailored abuse prevention order).

Although there may be some risk of inadvertent violation of an order requiring defendant to stay 1000 feet from plaintiff, we cannot conclude that the condition denies defendant due process of law. His argument is based largely on the claim that he may be prosecuted, or held in criminal contempt, for inadvertent violation of the order because it is a strict liability crime under *State v. Mott*, 166 Vt. 188, 692 A.2d 360 (1997), and *State v. Crown*, 169 Vt. 547, 726 A.2d 493 (1999) (mem.). Defendant misreads these cases. In *Mott*, defendant argued that he could not be convicted for contacting his former wife by mail in violation of an abuse prevention order because he was unaware of the order and could not have intended to violate it. We held that intent to violate the order is not an element of the crime, and affirmed the conviction. 166 Vt. at 197, 692 A.2d at 366; see also *State v. Crown*, 169 Vt. at 549, 726 A.2d at 495; *State v. Dann*, 167 Vt. 119, 133, 702 A.2d 105, 114 (1997). In so holding, we concluded that the trial court had correctly instructed the jury that the State must show only that defendant intended to do the act that constituted the violation; the violation could not result from a mistake, an accident, or a misunderstanding. See *Mott*, 166 Vt. at 197, 692 A.2d at 365-66.

Under *Mott*, therefore, defendant could not be criminally convicted of violating the abuse prevention order unless the State proved that he intended to place himself within 1000 feet of plaintiff. Contrary to

defendant's claim, he could not be convicted of an inadvertent violation of the order. Accordingly, we reject the argument that the order denied him due process of law.[1]

■ Defendant also asserts that the court abused its discretion in imposing the 1000-foot buffer zone. The Abuse Prevention Act vests the trial court with broad discretion to craft "such orders as *it deems necessary* to protect the plaintiff, the children or both." 15 V.S.A. § 1103(c) (emphasis added). Such orders may include "prohibiting the defendant from coming within a fixed distance of the plaintiff [or] the children." *Id.* § 1103(c)(1). The dissenting Justice suggests that a smaller distance might eliminate the likelihood of inadvertent violations and prove more "effective." 172 Vt. at 13, 769 A.2d at 1301. As noted, however, defendant could not be convicted of an inadvertent violation. Furthermore, the judgment as to whether a 1000-foot buffer zone, or some greater or lesser distance, was necessary to provide plaintiff and her child with an adequate level of security was one that rested within the sound discretion of the trial court. The trial court, not this Court, was in the best position to determine the appropriate distance. See *State v. Hagen*, 151 Vt. 64, 65, 557 A.2d 493, 494 (1989) (finder of fact is best positioned to determine weight of evidence, credibility and demeanor of witnesses, and persuasive effect of testimony, and findings will not be set aside unless clearly erroneous). We may not second-guess the trial court's judgment merely because a smaller distance might, in our view, have been more effective.

■ Defendant also contends the evidence and findings were insufficient to support the buffer-zone and firearms limitations. Even without actually viewing the witnesses or hearing their testimony, one cannot review the record evidence in this case and fail to understand the trial court's conclusion that a substantial buffer zone was necessary to secure plaintiff's physical and emotional well-being. Plaintiff described in detail, albeit with some difficulty, the vicious attack and substantial injuries she suffered at the hands of defendant. The severity of the injuries was corroborated by the investigating officer and by photographs of plaintiff taken shortly after the incident.

---

[1] Defendant's due process theory is that where there are punitive consequences, compliance with the order cannot be beyond his control. See *State v. Bubar*, 146 Vt. 398, 405, 505 A.2d 1197, 1201-02 (1985) (probation condition can not impose obligation with which probationer cannot comply). Defendant has not described the challenge beyond this brief statement, and, accordingly, we have not examined the theory in detail. It is sufficient to hold that defendant does not face the punitive consequences he argues.

Plaintiff also testified that defendant had threatened to kill her if he saw her with other men. In addition, the officer conveyed a sense of defendant's utter lack of remorse or contrition, noting that during his interview with the officer he had twice stated "that he would come out smelling like a rose."

There was also testimony that plaintiff worked two jobs, and that one of them, cleaning homes, involved her traveling to numerous locations where she was alone and vulnerable. Thus, a zone of protection confined to plaintiff's home or workplace was plainly inadequate to the exigencies of the situation; a floating zone was necessary to adequately protect plaintiff and her daughter. Although the court did not articulate its reasoning process in detailed, step-by-step findings, it explained that it had chosen the 1000-foot zone suggested by plaintiff as the minimum distance that "would be safe . . . but . . . reasonable for enforcement purposes." As to the firearms restriction, plaintiff testified that she had seen defendant in possession of firearms, and was uncertain whether he continued to possess them.

We conclude, therefore, that the evidence was sufficient to support the buffer-zone and firearms limitations. See *Begins v. Begins*, 168 Vt. 298, 301, 721 A.2d 469, 471 (1998) (given trial court's unique position to assess credibility of witnesses and weigh evidence, we must affirm court's findings if supported by credible evidence, and its conclusions if supported by findings). Further, while the court's findings were not elaborate, viewed in the light of the record they were adequate to support the distance and firearms restrictions. The dissent faults the trial court for failing to explain the basis for these conditions. Findings are indeed useful guides to a trial court's reasoning process; from an appellate perspective, one can never have too many findings. Yet we must not lose sight of the fact that the purpose of the Abuse Prevention Law "is to provide 'inexpensive and uncomplicated proceedings that allow an abused family member to obtain immediate relief.'" *Mott*, 166 Vt. at 196, 692 A.2d at 366 (quoting *Rapp v. Dimino*, 162 Vt. 1, 4, 643 A.2d 835, 837 (1993)). Requiring more detailed and express findings in this case, where the record otherwise amply supported the order, undermines that purpose, and sends the wrong message to trial courts and litigants. Accordingly, we affirm that portion of the order imposing the 1000-foot buffer zone and firearms limitations.

█ Defendant next contests the inclusion of plaintiff's child in the no-contact provision and the distance restriction. He argues that the statute does not authorize inclusion of the child where she is not

defendant's child and the proven abuse did not involve the child. In pertinent part, the statute provides:

(a) Any family or household member may seek relief from abuse by another family or household member on behalf of him or herself or his or her children by filing a complaint under this chapter.

. . . .

(c) If the court finds that the defendant has abused the plaintiff and that there is a danger of further abuse, the court shall make such orders as it deems necessary to protect the plaintiff, the children or both, which may include the following:

(1) an order that the defendant refrain from abusing the plaintiff, his or her children or both and from interfering with their personal liberty, including restrictions on the defendant's ability to contact the plaintiff or the children in person, by phone or by mail and restrictions prohibiting the defendant from coming within a fixed distance of the plaintiff, the children, the plaintiff's residence, or other designated locations where the plaintiff or children are likely to spend time.

15 V.S.A. § 1103(a), (c)(1). The statute clearly authorizes the court to include plaintiff's child in the abuse-prevention order. Nowhere does it state that the child must also be defendant's child or that the court must have found that defendant also abused the child. Indeed, the language is directly to the contrary. Particularly for location restrictions, the statutory coverage is logical because plaintiff will often be present with her child. Thus, an order that provides a zone of protection for plaintiff's child or requires defendant to stay away from places the child is likely to be also provides a zone of protection for plaintiff.

In this case, the order prohibited defendant from abusing plaintiff and from threatening to use physical force, or using force, against plaintiff. These parts of the order included only plaintiff. Most of the remainder of the order has parallel provisions for plaintiff and for plaintiff's child. Thus, defendant was prohibited from following or stalking either plaintiff or her child, from threatening or harassing either, from contacting either, and from coming within 1000 feet of

either. We reject defendant's argument that these provisions are not authorized by the statute.

■ Next, defendant challenges the provision that prohibits him from possessing any firearms or dangerous weapons, except restaurant cutlery used at his restaurant. Defendant argues that the provision is overbroad, and unsupported by the record, because no weapon was used in the assault that underlies the order. As defendant acknowledges, however, the statute authorizes the court to "make such orders as it deems necessary to protect the plaintiff, the children or both." *Id.* § 1103(c). As he also acknowledges, federal law prohibits him, as a person subject to a civil protection order, from possessing or receiving a firearm in interstate commerce. 18 U.S.C. § 922(g)(8).[2] Moreover, many state legislatures, and the United States Congress, have concluded that restricting an abuser's access to firearms will reduce the threat of further abuse, or the injury that might result from further abuse. See *Kie v. McMahel*, 984 P.2d 1264, 1270-71 (Haw. Ct. App. 1999) (applying Hawaii statute); N. Hathaway & J. Zanini, *Update and Overview of Massachusetts Case Law Considering the Scope and Meaning of the Abuse Prevention Statute and Related Issues for Prosecutors*, 30 New Eng. L. Rev. 375, 391-92 (1996) (describing Massachusetts statute); Comment, *Seizing the Ammunition from Domestic Violence: Prohibiting the Ownership of Firearms by Abusers*, 29 Rutgers L.J. 607, 622 (1998) (itemizing thirteen state abuse-prevention statutes that require weapons seizure or forfeiture). A substantial percentage of acts of domestic violence are committed with firearms. See Comment, *Domestic Violence and Guns: Seizing Weapons Before the Court Has Made a Finding of Abuse*, 23 Vt. L. Rev. 349, 362, 366-67 (1998) (citing national and Vermont statistics). Although defendant is covered by the federal restriction, federal authorities may have limited capacity to enforce the restriction. See *id.* at 364 (noting report by Vermont's United States Attorney that, due to limited resources, it would be rare for his office to enforce the federal

---

[2] Under the federal statute, the prohibition on possessing a firearm is applicable if (A) the order was issued after a hearing of which defendant had notice and in which he had the opportunity to participate; (B) the order restrains defendant from "harassing, stalking, or threatening an intimate partner" or engaging in conduct that would place an intimate partner "in reasonable fear of bodily injury"; and (C) the order contains a finding that defendant "represents a credible threat to the physical safety of such intimate partner" or explicitly prohibits the use, attempted use or threatened use of physical force that would reasonably be expected to cause bodily injury against such intimate partner. 18 U.S.C. § 922(g)(8). The order in this case meets each of these requirements.

prohibition of firearm possession by person subject to abuse prevention order). The federal restriction does not preempt our power to impose a parallel restriction. See *Conkle v. Wolfe*, 722 N.E.2d 586, 593-94 (Ohio Ct. App. 1998). We thus conclude that the general authorization for the court to make orders it deems necessary to protect plaintiff, and her child, was sufficiently broad to allow the court to prohibit defendant from possessing firearms. See *Woolum v. Woolum*, 723 N.E.2d 1135, 1139 (Ohio Ct. App. 1999) (holding that order to surrender firearms lies within the court's discretion).

■ The order covered more than firearms, however; it also extended to possession of "dangerous weapons." We have defined a dangerous weapon as "a weapon which in the way it is used or attempted to be used may endanger life or inflict great bodily harm." *State v. Deso*, 110 Vt. 1, 8, 1 A.2d 710, 714 (1938). It is similarly defined in the statute prohibiting the carrying of deadly or dangerous weapons in a courthouse. See 13 V.S.A. § 4016(a)(2). These definitions are unhelpful to defining a possession prohibition, however, because they depend upon the use or intended use of the weapon, which cannot be determined from possession alone.

We derive some help from the court's exclusion of cutlery used at defendant's restaurant. Yet even this is overbroad, as there is no practical means to distinguish between restaurant cutlery and normal home cutlery. Indeed, many common household implements may become dangerous weapons if misused for that purpose. We conclude, accordingly, that the term "dangerous weapon" is both vague and overbroad in this context. Our holding necessitates that the restriction on dangerous weapons be stricken, and the matter remanded to the trial court for an opportunity to substitute a more narrow and precise restriction.

■ Next, defendant challenges the five-year length of the order as unreasonable, and unsupported by the evidence and findings. The Abuse Prevention Act imposes no limit on the duration of relief-from-abuse orders, but does require that such orders "be granted for a fixed period." 15 V.S.A. § 1103(d). There is no basis to conclude that a five-year period is unreasonable as a matter of law. Furthermore, although the court did not make specific findings relating to the five-year period, the record evidence clearly disclosed the basis of the order. Plaintiff and defendant had been involved in a relationship for five years. The underlying assaultive incident was particularly violent and occurred nine months *after* the parties had separated. Defendant had

threatened to kill plaintiff if she were *ever* with another man. The court could thus conclude that only an order of long duration would ensure a sufficient cooling-off period to minimize the risk of further abuse. Accordingly, we uphold the five-year provision of the order.

*The order for relief from abuse issued on February 10, 1999 is amended to strike from part 9 of the order the following words: "or dangerous weapons — excepting restaurant cutlery, which shall not be in his possession off restaurant premises," and the matter is remanded for further proceedings on this issue. In all other respects, the order is affirmed.*

**Dooley, J.,** dissenting. Although I generally agree with the majority that the evidence in this case is sufficient to support the family court's order, I part company on the adequacy of the findings. The majority defends the findings as adequate under the circumstances, establishing a rule that essentially eliminates the requirement of findings in abuse prevention cases, because they are inconsistent with a policy of "inexpensive and uncomplicated proceedings that allow an abused family member to obtain immediate relief." *Rapp v. Dimino*, 162 Vt. 1, 4, 643 A.2d 835, 837 (1993). Ironically, we are administering in this case one of the few statutes that explicitly requires findings. See 15 V.S.A. § 1103(h); *Coates v. Coates*, 171 Vt. 519, 521, 769 A.2d 1, 2-3 (2000).

The entire "findings" in this case, written or oral,[1] are attached to this .dissent as an appendix. They consist of four checked boxes, to specify which conclusory language from the statute applies. The form tells the family court judge what to do: "Check the applicable box; cross out findings that do not apply" (even these directions weren't fully followed here). The first two checked boxes state that defendant has abused plaintiff, giving no detail and referring the reader to the statute for a definition of abuse. The third says there is a danger of further abuse, and again gives no detail. The fourth says that defendant represents a credible threat to the physical safety of plaintiff and again does not state why.

Only in the context of a checked box on a form that has that label would anyone describe these conclusory statements as findings. They fail to discharge the court's duty to "sift the evidence and state the facts." *Lynda Lee Fashions, Inc. v. Sharp Offset Printing, Inc.*, 134

---

[1] The court made oral "findings," consistent with, but even more sparse than; the written "findings."

Vt. 167, 170, 352 A.2d 676, 677 (1976). They do not give us the basis for appellate review, *Secretary, Agency of Natural Resources v. Irish*, 169 Vt. 407, 419, 738 A.2d 571, 580 (1999), because they fail to give us a clear statement of what was decided and how the decision was reached. *Gustin v. Gustin*, 148 Vt. 563, 565-66, 536 A.2d 933, 935 (1987). As we described a similar conclusory statement in *Arnold v. Arnold*, 141 Vt. 118, 120, 444 A.2d 890, 892 (1982):

> To the extent this statement is a conclusion of law, it is not supported by the findings; considered as a finding of fact, it does not satisfy the purposes of V.R.C.P. 52.

The "findings" in this case fail to say anything specific regarding the evidence the court heard or the parties before it.

In many cases, the absence of real findings is of little consequence; the checked boxes indicate whose version of the facts is believed, and the remedy is relatively standard. Indeed, if defendant had appealed the court's conclusion that defendant had abused plaintiff, and relief was appropriate, I would hold that any violation of the findings requirement was harmless on the overwhelming evidence present here, at least without a specific request from defendant for findings.

In this case, however, defendant has challenged aspects of the order, arguing that they are unreasonable under the circumstances. I think these cannot be adequately reviewed without some statement of the court's reasons for imposing them, supported by findings. First, the court imposed a requirement that defendant not be within 1000 feet of plaintiff or her child. Plaintiff requested this restriction. Defendant asked for a three-hundred-foot restriction because an identical restriction was contained in the conditions of release in the related district court criminal case. Although the court acknowledged that it could not impose a distance restriction so great that defendant would not know that he was within the prohibited distance, it ordered the distance restriction sought by plaintiff, and rejected that sought by defendant, with no explanation.[2]

---

[2] The majority states that the trial court explained its decision as the "minimum distance" that would be safe but reasonable for enforcement purposes. 172 Vt. at 6, 769 A.2d at 1296. Apparently, the majority is relying on a statement that the court made to plaintiff in seeking a recommendation for a distance restriction:

> I guess I would ask what distance you feel would be safe to ask— now, please keep in mind that I — we can't put like one mile because a person doesn't know when they're within a mile of someone else, we need to put down a distance that would be safe, but is reasonable for enforcement purposes.

The background behind the order that defendant not possess dangerous weapons was similar. Plaintiff sought the restriction although she testified that she thought that defendant no longer possesses guns, but was not sure. Defendant objected to an order, and defense counsel told the court that he would inform defendant of the federal restriction. Without explanation, the court imposed the restriction in a form too broad to sustain.

Finally, defendant has challenged the length of the order. Up until 1994, abuse prevention orders could be issued with a maximum duration of a year, subject to extension for such additional time as the court found necessary. See 1979, No. 153 (Adj. Sess.), § 1 (adding 15 V.S.A. § 1103(b)). An amendment in that year eliminated the durational limit, while still requiring that the order be issued for a "fixed period." 1993, No. 228 (Adj. Sess.), § 2 (codified at 15 V.S.A. § 1103(d)). The order may be modified only based on "a showing of a substantial change in circumstance." 15 V.S.A. § 1103(d).

We see enough orders of this type to observe that a duration of five years is unusual. In order to protect plaintiff and her child, the order imposes substantial limits on defendant's mobility. Defendant has lost the right to possess a firearm even for hunting. We should require the court to explain why it imposed an order of this length.

We have often said that we will not speculate on the basis for a challenged court order and must reverse an order unsupported by sufficient findings and conclusions to enable us to know its basis. E.g., *Secretary v. Upper Valley Regional Landfill Corp.*, 167 Vt. 228, 242, 705 A.2d 1001, 1010 (1997) ("We will remand if we are left in a position where we must speculate as to the basis of the decision reached or if a claim has been left unaddressed.") (citation omitted). We are violating this requirement here. More important, I believe, is that we are accepting in the name of speed and efficiency a practice that undermines the legitimacy of an order that must be respected if it is to be effective. It takes little time to tell defendant directly why his conduct was so outrageous that extraordinary protections are required. Unfortunately, the failure to do so makes the court's actions appear arbitrary and creates an excuse not to comply voluntarily. I

---

Would you like to make a suggestion?

This is not an explanation of the order the court actually issued. Even if it were, the majority embellished it by stating that the court established the *minimum* safe distance. In fact, the court never used the word "minimum," and nothing in its statement indicates that it was seeking the "minimum" safe distance.

believe that under the guise of helping abuse victims, we are actually diminishing the efficacy of orders they must rely on.

Finally, because we are remanding this case in any event, we should give the trial court the opportunity to revisit the distance restriction in light of our decision. Although I agree with the majority that under the court's order defendant cannot face criminal liability unless he intends to come within 1000 feet of plaintiff, I question whether a floating restriction alone is effective in light of that ruling. The State will have great difficulty proving that defendant's presence within 1000 feet of plaintiff is intentional, at least unless defendant is fairly close. See *State v. Conti*, 672 A.2d 885, 887 (R.I. 1996) (State failed to prove violations of no contact order were intentional where defendant greeted abused victim at post office and waved to her as she drove by him). Both the majority and the family court appear to assume that the greater the distance restriction, the greater the security for plaintiff. I question that assumption, especially when we are dealing with distances far greater than those necessary for defendant to see and recognize plaintiff. The trial court gave an illusion of security, not security.

I believe the order could create much greater security, and eliminate defendant's objection that he cannot comply, if it contained substantial distance restrictions around places where plaintiff lives and works, and around the child's school, see L. Lerman, *A Model State Act: Remedies for Domestic Abuse*, 21 Harv. J. on Legis. 61, 106-07 (1984), accompanied by a distance restriction around plaintiff and her child which is smaller and more workable.

For the above reasons, I would remand the restrictions ordered with respect to the distance limits and the possession of weapons, and the five-year duration, for the court to provide findings and reasons to support them. For the reasons stated by the majority, I agree that the dangerous weapon restriction is overbroad and must be modified. I would also remand for the court to consider modifications to the distance restriction as explained above. I am authorized to state that Justice Johnson joins in this dissent.