*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-042

AUGUST TERM, 2015

| | | |
|---|---|---|
| Rosemary Noel | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Washington Unit, |
| v. | } | Family Division |
| | } | |
| | } | |
| Andre Noel | } | DOCKET NO. 212-5-13 Wndm |

Trial Judge: Thomas J. Devine

In the above-entitled cause, the Clerk will enter:

Husband appeals from a divorce judgment of the superior court, family division. He contends the court erred in awarding the family home to wife pursuant to an antenuptial agreement. We affirm.

The facts may be summarized as follows. The parties were married in August 1979 in the United Kingdom. One month before the marriage, in July 1979, the parties signed a prenuptial agreement in Montreal, where they were then living. The agreement was prepared at the behest of husband, who wanted to protect his assets in the event of divorce. Husband, who was nine years older than wife, owned a business, which imported and distributed skiwear and sporting goods. Wife brought no significant property to the marriage.

Under the agreement, the parties agreed to "adopt the regime of separation as to property as provided by the Civil Code of the Province of Quebec." This essentially meant that the parties' individually-owned property would remain individually owned, that each party would be responsible for his or her own debts, and that each would be entitled to receipt of his or her own separate property upon dissolution of the marriage. Several years later, in August 1982, wife purchased in her own name a property that would become the marital home in Waterbury Center, Vermont. The trial court credited wife's testimony that her father supplied her with $63,000 of the $79,000 purchase price, and that she funded the balance from her savings. Wife also subsequently purchased the undeveloped lot next to the property.

Husband opened a retail skiwear store in Stowe, Vermont that wife operated while husband continued to spend time in Montreal attending to his other businesses. In 1990, the parties executed a second agreement confirming their commitment to the "regime of separation" as to their property under Quebec law. In the late 1990s, husband's businesses experienced considerable setbacks, resulting in his declaring bankruptcy. The parties separated in 2003; wife left Vermont and returned to live in England, while husband remained in Vermont. The house went into foreclosure, but wife was able to redeem the property through a loan that she obtained from her new partner in England.

Wife filed for divorce in Vermont in May 2013. Following a one-day trial, and court issued a written decision and final judgment of divorce in January 2015. With respect to the principal asset, the marital home in Waterbury Center, the court found that the prenuptial agreement controlled, and awarded the home to wife as her separate property under the agreement. The court awarded husband all of his businesses, although it noted that they "may be dormant" and that husband had declined to provide any opinion on the value of their remaining assets. This appeal by husband followed.

Our review is generally deferential. The trial court enjoys "broad discretion" in dividing marital property, and we will not disturb its decision absent a showing that the court abused its discretion. Wade v. Wade, 2005 VT 72, ¶ 13, 178 Vt. 189. Furthermore, the law governing the validity and enforcement of prenuptial agreements is well settled. In determining the enforceability of such agreements generally, we have held that a court must consider whether the spouses have made a fair and reasonable disclosure of their financial status, entered into the agreement voluntarily, and agreed to provisions that are fair to each other. Bassler v. Bassler, 156 Vt. 353, 361 (1991). "Although Vermont courts will generally enforce antenuptial agreements signed in other states, we have recognized that we will not enforce an agreement that contravenes the public policy of Vermont. . . . [I]n the absence of fraud, duress or other unconscionable advantage the agreement will be enforced according to its terms." Stalb v. Stalb, 168 Vt. 235, 242-43 (1998) (quotation omitted).

It is not entirely clear whether husband here is challenging the trial court's award of the marital home to wife, pursuant to the prenuptial agreement, or the court's refusal to reimburse husband for the amounts he claimed to have spent on improving and maintaining the home. Although husband's brief states that he "makes no claim to the ownership of the house, respecting the antenuptial agreement," he also "challenges the legal conclusion that the pre-nuptial agreement can be applied to the home," and contests wife's claim that her deeded title "is the last word in determining ownership."

To the extent that husband is contesting the enforcement of the agreement, we find no basis to disturb the judgment. Husband expressly "does not challenge the facts as found by the trial court," and the court here found that the original agreement signed by the parties in 1979 accurately "incorporate[d] their intention to adopt the regime as to separation of property," and that, in signing the additional agreement in December 1990, "the parties' intent to be bound by the prior regime as to separation of property remained clear." Furthermore, husband makes no claim that wife failed to disclose assets, or that she exerted any duress or took unconscionable advantage of him in entering the agreement, or that enforcement would be contrary to public policy. Accordingly, we find no basis to disturb the court's decision to enforce the agreements.

To the extent that husband is claiming the court erred in declining to reimburse him for the funds that he claimed to have expended on maintaining and improving the home, again the court's findings—which husband does not contest—support the decision. While the court acknowledged husband's documented expenditures for repairs, maintenance, and improvements to the home, it expressly rejected his claim for reimbursement for several reasons. These included the fact that the source of husband's funds was not always clear due to the extensive commingling of the parties' assets; that over the course of their long marriage both parties had contributed substantially to the upkeep of the home; and finally that both parties "had the use and enjoyment of the property." As noted, husband has not challenged these findings, which reasonably support the court's discretionary decision not to order reimbursement. See Scott v.

2

Scott, 155 Vt. 465, 471-72 (1990) (upholding court's decision to award marital home to wife despite both parties' contributions to mortgages and improvements over course of long marriage as within its "wide discretion").  We thus find no abuse of discretion, and no basis to disturb the judgment.

Affirmed.

BY THE COURT:


_____
Paul L. Reiber, Chief Justice


_____
Marilyn S. Skoglund, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice